MARINE, Collector, v. LYON et al.

(Circuit Court of Appeals, Fourth Circuit. February 5, 1895.)

No. 95.

1. BOARD OF GENERAL APPRAISERS—POWERS.
The board of general appraisers has the same power which belongs to a court to allow the substitution of a copy for the original of a document forming part of the record of a case submitted to it, when such original is proved to have been lost.

2. SAME—EFFECT OF FINDINGS.
The findings of the board of general appraisers upon a question of fact will not be disturbed on appeal, unless without evidence to support them, or so manifestly wrong that it would be the duty of the court to disregard them.

Appeal from the Circuit Court of the United States for the District of Maryland.

This was an application by the collector of the port of Baltimore for a review of the decision of the board of general appraisers respecting certain merchandise imported by J. Crawford Lyon and others, trading as Lyon, Hall & Co. The board found that certain protests had been duly filed, and had been lost, and permitted copies of such protests to be filed. The circuit court sustained the decision of the board of general appraisers. The collector appeals.

John T. Ensor, U. S. Atty., for appellant.
John F. Preston, for appellees.

Before GOFF and SIMONTON, Circuit Judges, and BRAWLEY, District Judge.

BRAWLEY, District Judge. Messrs. Lyon, Hall & Co. imported through the port of Baltimore nine separate lots of jute rugs, between July, 1891, and May, 1892, and claimed that the same were dutiable as jute carpetings, under paragraph 363, Act Oct. 1, 1890. The collector classified said rugs as pile fabrics, and dutiable under paragraph 350 of said act, which imposes a higher rate of duty than is provided in paragraph 363, and the entries were liquidated accordingly. It was subsequently held that the rugs were properly dutiable under paragraph 363, and, as protests in due form had been filed with respect to seven of the lots, the same have been reliquidated, and the excess of duties paid has been recovered. The controversy here grows out of a question as to the regularity and legality of the protests as to two of the lots, which are referred to as "No. 949" and "No. 950." The act of June 10, 1890, provides (section 14) that the decision of the collector as to the rate and amount of duties chargeable upon imported merchandise shall be final and conclusive against all persons interested therein, unless the owner, importer, consignee, or agent of such merchandise shall, within 10 days after (but not before) such ascertainment and liquidation of duties, etc., or within 10 days after the payment of such fees, charges, and exactions, if dissatisfied with such decision, give notice in writing to the collector, setting forth therein distinctly and specifically, and in

respect to each entry and payment, the reasons for his objections thereto, etc. It is further provided that the collector shall transmit the invoice and all the papers and exhibits connected therewith to the board of general appraisers, created by said act, which board "shall examine and decide the case thus submitted, and their decision, or that of a majority of them, shall be final and conclusive upon all persons interested therein," etc. Protests in seven cases were considered by this board, and sustained in all save one, which was overruled, for reasons not pertinent to this inquiry. It is not disputed that the two lots now under our consideration were of the same class of merchandise, and subject to the same rate of duty, as those ordered by the board to be relinquished. These two lots, imported per steamship Minnesota, September 18, 1891, and the steamship Montana, October 26, 1891, were liquidated October 14, 1891, and November 25, 1891, respectively. It is claimed that protests respecting these two importations were filed with the collector of the port of Baltimore on October 19 and November 30, 1891, respectively. What are alleged to be copies of the same, bearing those dates, were lodged with the collector, and by him transmitted to the board of appraisers on February 28, 1893, with a letter stating that, after careful investigation, he found no record in his office of said protests; and, after detailing the system of the office, tending to show how impossible it would be that such protests should be filed without leaving some trace of their existence, he insisted that "the loss of a protest has never occurred, and is extremely unlikely to occur." The alleged copies of the protests, with the letter of the collector, a letter of the naval officer of like import, and an affidavit of the chief clerk of the liquidating department of the Baltimore customhouse, tending to support the contention that such protests had never been filed, and stating other facts to sustain such contention, came before the board of general appraisers in due course, and with them was an affidavit of J. Crawford Lyon, one of the firm of Lyon, Hall & Co., to the effect that a protest in each of these cases, of the same tenor as the protests filed in connection with the other entries, was signed by him, and given to Frank H. Shallus, the customhouse broker of his firm; and affidavits of the said Shallus that protests in each case had been filed. Both Lyon and Shallus charged in their affidavits that an irregular record had been kept by the person intrusted with the filing of protests, and that said person had since been dismissed for inattention to duty. The decision of the board of appraisers was filed August 11, 1893, and it was held without dissent that merchandise identical with that in question was dutiable as claimed by the appellants, and that the real point in issue was whether the appellants had filed protests against the collector's decision within 10 days after liquidation, as required by the statute above cited. Upon this point the board found that "the customs officer referred to was inattentive to duty, and was removed for drunkenness," and that there was prima facie proof that the original protests were filed in time. The protests were sustained, and the collector authorized to reliquidate the entries accordingly. From

this decision the collector appealed to the United States circuit court, where, after a hearing, a judgment was entered affirming the decision of the board of general appraisers, and from this judgment the collector appeals.

The precise question for our determination, and the only question, is whether the board of general appraisers had jurisdiction to hear and determine the subject-matter in controversy. If it had, it is scarcely disputed that its findings of fact will not be disturbed, unless they are wholly without evidence to support them, or so manifestly wrong that it would be the duty of the court to disregard them. The board being the creature of statute, we must look to the statute for the definition of its powers. The twelfth section of the act of June 10, 1890, provides for the appointment by the president, by and with the advice and consent of the senate, of nine general appraisers of merchandise, fixes their salary, and confers upon them authority to exercise the powers and duties devolved upon them by that act, "and to exercise, under the general direction of the secretary of the treasury, such other supervision over appraisements and classifications for duty of imported merchandise as may be needful to secure lawful and uniform appraisements and classifications at the several ports." The fourteenth section of the same act prescribes the method of procedure in appeals from the decision of the collector as to the rate and amount of duties chargeable upon imported merchandise, and provides for the hearing of such appeals by a board of the three general appraisers, which "shall examine and decide the case thus submitted." Judicial power is thus conferred, and the phraseology implies a court. It has been so held:

"In the circuit court the return of the board is to be considered substantially in the same manner as the report of a master is considered in that court, or as the record including the opinion of the court in an equity or admiralty suit is considered in an appellate court." In re Van Blankensteyn, 5 C. C. A. 579, 56 Fed. 475.

That a court can allow the substitution of a copy of a pleading in the place of the original proved to be lost is too clear for argument. If the office of the collector of the port of Baltimore had been destroyed by fire, it would scarcely be disputed that the board of appraisers could allow secondary evidence as to the contents of documents proved to have been burned. Between papers lost by a fire and those lost by the carelessness of their custodian there can be no legal distinction. When this board found as a matter of fact that the protests had been filed in time, it was clearly within its jurisdiction to allow copies of the originals to be filed in place of those misplaced through carelessness. In the absence of fraud, or mistake so gross as to amount to it, such finding should not be disturbed. We find no error in the judgment of the circuit court dismissing the appeal. It is therefore affirmed.