# BISHOP *v.* UNITED STATES.

### APPEAL FROM THE COURT OF CLAIMS.

No. 92. Argued March 23, 1905.—Decided April 3, 1905.

An officer in the Navy failing to report at the time ordered, while his vessel was in Japanese waters, in 1865, was placed under arrest for drunkenness and neglect of duty; later, on the same day he was, by order of the rear admiral, restored to duty to await an opportunity to investigate the case. Subsequently the rear admiral convened a court martial consisting of seven officers all of equal or superior rank to accused who was served with charges and arrested, arraigned and tried, found guilty and dismissed. Accused stated he had no objections to any of the court and knew of no reason why it should not proceed with his trial. Subsequently in a suit for salary on ground of illegal dismissal he claimed the first arrest was an expiation of the offense and a bar; that the court was invalid and incompetent and the sentence invalid not having been approved by the rear admiral or the President. *Held*, that:

Par. 1205, Naval Regulations of 1865, providing that the arrest and discharge of a person in the Navy for an offense shall be a bar to further martial proceedings against him for that offense, does not apply to an arrest and temporary confinement not intended as a punishment but as a reasonable precaution for the maintenance of good order and discipline aboard.

Under Article 38 of the law of April 23, 1800, 2 Stat. 50, and Par. 1202, Naval Regulations of 1865, the provision as to service of charges upon the accused at the time that he is put under arrest refers not to the temporary arrest necessary for order and discipline at the time of the commission of the offense but to the subsequent arrest for trial by court martial.

It is a question for the officer convening the court to determine whether more officers could be convened without injury to the service and his action in this respect cannot be attacked collaterally, and if the accused expresses satisfaction with the court martial as constituted, it is a clear waiver of any objection to its personnel.

Under Articles 19 and 20 of the act of July 17, 1862, 12 Stat. 605, the rear
admiral convening the court martial was not obliged to confirm the sentence of dismissal.

The approval by the President sufficiently appears where the record shows
that the sentence was submitted to the President and his approval appears at the foot of a brief in the case and the Secretary of the Navy
writes to the accused that the President has approved the sentence.

THIS is a petition for pay as a Lieutenant Commander from
February 8, 1868, when defendant was dismissed from the
naval service pursuant to the sentence of a general court-
martial, until March 9, 1871, when he was reinstated by
special act of Congress.   The Court of Claims made a finding
of facts, the material parts of which are incorporated in the
opinion, and dismissed the petition.   38 C. Cl. 473.

*Mr. Irwin W. Schultz* for appellant:

The alleged court-martial had no jurisdiction over appellant
as he had already been punished for the alleged offense by his
arrest and suspension from duty on May 31, 1867.   Par. 1205,
Nav. Reg. 1865; and see also pars. 455, 1122, 1202, 1210, 1212;
Art. 38, laws regulating the Navy, act of 1800, 2 Stat. 50.

The judgment of a court-martial may be collaterally at-
tacked.   *Ex parte Watkins,* 3 Pet. 270.

The court-martial was illegally constituted.   Art. II, act
of 1862, 12 Stat. 603.   As to convening courts-martial see
*Mills* v. *Martin,* 19 Johns. (N. Y.) 29; *Runkle* v. *United States,*
122 U. S. 543; *Brown* v. *Keene,* 8 Pet. 115; Nav. Reg. 1900,
par. 1837.   Statutory provisions as to constitution of the
court must be observed, otherwise it is fatal.   Wells on Juris-
diction, 1880, §§ 15–17, 40–42, 47; *Keyes* v. *United States,*
109 U. S. 136; *Fry* v. *Warden,* 100 N. Y. 26.   It is doubtful
whether the accused could have waived an objection to the
jurisdiction of the court.   *Brook* v. *Davis,* 17 Pick. 148; *S. C.,*
22 Pick. 498.

The sentence is void because not affirmed by the rear
admiral and the President.   Arts. 19, 20, act of 1862, 12 Stat.
600; par. 1239, Nav. Reg. 1865; *Re Sands and Rinker,*

2 Am. St. Papers, War Affairs, 539; 2 Op. Atty. Gen. 19; 1 Winthrop's Mil. Law, 639; 13 Op. Atty. Gen. 459; cases cited *supra*.

*Mr. Assistant Attorney General Pradt* and *Mr. Assistant Attorney Felix Brannigan* for the United States, submitted.

MR. JUSTICE BROWN, after making the foregoing statement, delivered the opinion of the court.

This case depends upon the validity of the findings and sentence of the court-martial, and is brought under an act of Congress approved June 6, 1900, 31 Stat. 1612, nearly thirty years after petitioner was recommissioned as a Lieutenant Commander, which enacted "that the claim of Joshua Bishop for alleged items of pay, due and unpaid to him for services as a Lieutenant Commander . . . be, and the same is hereby referred to the Court of Claims. Jurisdiction is hereby conferred on said court to try said cause, and the statute of limitations shall not apply thereto, and to render final judgment therein, and subject to the right of appeal by either party." Claimant insisted in the court below that this statute was not a mere waiver of limitations, but a recognition that claimant was a Lieutenant Commander during the time referred to in the act, but as this point is not made in the briefs filed in this court, it may be considered as abandoned.

The action of the court-martial in dismissing the petitioner from the service is attacked upon the following grounds:

1. That the court had no jurisdiction over him, because he had already been punished for the offenses charged against him, viz., drunkenness and neglect of duty.

It appears from the findings that Bishop was a Lieutenant Commander in the naval service, attached to the steamer Wyoming, then lying in the harbor of Nagasaki, Japan; that he was ordered by his commanding officer to have his ship ready for sea by daylight on the morning of the thirty-first

of May, 1867, but that he went ashore and did not return until after daylight. On May 31 the following entries appear on the log:

"From 4 to 8 A. M.

"Lieutenant Commander Joshua Bishop was suspended from duty by order of Lt. Commander C. C. Carpenter.

"GEORGE B. GLIDDEN, *Master.*"

"From 6 to 8 P. M.

"At 6.40 Lt. Comdr. Joshua Bishop was restored to duty by order of Rear Admiral H. H. Bell.

"GEORGE B. GLIDDEN, *Master.*"

Upon being placed on trial before the court-martial Bishop pleaded that he was placed under arrest for the offenses specified (drunkenness and neglect of duty), but was ordered released from arrest by Rear Admiral Bell; and in this connection refers the court to paragraph 1205, Navy Regulations of 1865, then in force, as follows:

"An offense committed at any one time, for which a person in the Navy shall have been placed under arrest, suspension or confinement, and subsequently entirely discharged therefrom by competent authority, or for which he shall have been otherwise fully punished, is to be regarded as expiated, and no further martial proceedings against him for the offense itself are ever afterwards to take place," etc.

Conceding that the petitioner was within the letter of the regulations, inasmuch as he was suspended from duty in the morning of May 31 and restored to duty on the evening of the same day, we do not think the case is within its real meaning, which looks to a *punishment* of the offense by such suspension. As it appears that Bishop was intoxicated during the preceding day, and went ashore and failed to report at daylight on the next morning, it would naturally be inferred that his suspension from duty was not intended as a punishment, but as a reasonable precaution for the maintenance of good order and discipline aboard.

That this was the understanding of the Rear Admiral is evidenced from the following letter restoring him to duty:

"U. S. Flagship Hartford,
"Nagasaki, Japan, May 31, 1867.
"Lieut. Comm'd'r C. C. Carpenter,
       "Comm'd'g U. S. S. Wyoming, Nagasaki.
    "Sir: Your communication of this date, reporting Lieutenant Commander Bishop to me, is received.
    "You will restore Lieutenant Commander Bishop to duty to *await an opportunity for time to investigate the case.*
       "I am, sir, very respectfully,
                        "H. H. Bell,
    "*Rear Admiral, Commanding U. S. Asiatic Squadron.*"

It is quite evident that the words "arrest, suspension or confinement," in paragraph 1205, contemplate an action in the nature of a punishment, upon the infliction of which the offense is to be regarded as expiated; but as the order restoring Bishop to duty was on its face merely to give "time to investigate the case," we do not think the order of suspension could have been intended as a punishment in itself, or as an expiation of the previous offense, nor did the order of Admiral Bell "entirely discharge" the accused within the meaning of § 1205 of the Navy Regulations.

2. No further proceedings appear to have been taken until June 21, 1867, when charges and specifications were preferred by Rear Admiral Bell, and on September 5, 1867, the following entry appears upon the log:
"From 4 to 8 A. M.
    "Lt. Comdr. Joshua Bishop *placed under arrest* to await trial by court-martial, and *served with copy of charges,* by order of Rear Admiral H. H. Bell, comdg. U. S. Asiatic squadron.
                "E. F. Crawford, *Mate.*"

The petitioner cites in this connection Article 38 of the laws regulating the Navy, approved April 23, 1800, 2 Stat. 45, 50, 51, providing that "all charges, on which an application

for a general court-martial is founded, shall be exhibited in writing to the proper officer, and the person demanding the court shall take care that the person accused be furnished with a true copy of the charges, with the specifications, *at the time he is put under arrest,*" and insists in this connection that he should have been served with a copy of the charges and specifications on May 31,. 1867, when he was suspended. The objection is unfounded.

As already. indicated, the first arrest was a temporary precaution for the preservation of good order and for further investigation. There was no opportunity for the preparation of charges and specifications, and evidently this was not the arrest contemplated by the above act.

It is true that paragraph 1202 of the Naval Regulations of 1865 provides that offenders shall be brought to trial within thirty days after notice to the proper authority, empowered to convene such court, or shall be released from arrest and returned to duty, and so remain until a court-martial can be convened to try him, "when he shall be again arrested on the day before the court is convened, so as to undergo his trial before it." As petitioner had been "released from arrest and returned to duty" on May 31, and so remained until September 5, when he was "again arrested" on the day before the court-martial was ordered to convene; and as he was served with a copy of the charges and specifications on the day he was arrested, we see nothing in these proceedings of which he is entitled to complain. The point is completely covered by *Johnson* v. *Sayre,* 158 U. S. 109, 117.

3. Petitioner's contention that the court-martial was illegally constituted rests upon article 11 of the act of July 17, 1862 (12 Stat. 600, 603), providing that "no general court-martial shall consist of more than thirteen nor less than five commissioned officers as members; and as many officers shall be summoned on every such court as can be convened without injury to the service, so as not to exceed thirteen; and the senior officer shall always preside, the others taking place

according to their rank; and in no case, where it can be avoided without injury to the service shall more than one-half the members, exclusive of the president, be junior to the officer to be tried."

The argument is that as the court-martial consisted of only seven officers it had not power or authority to try and sentence petitioner without showing affirmatively that no more could be convened without injury to the service. As the court-martial consisted of more than five commissioned officers, viz., seven, all of whom were of equal or superior rank to the petitioner, it was a question for the officer convening the court to determine whether more could be convened without injury to the service, and we do not think his action or non-action in this particular can be collaterally attacked. The regulations have been recently amended in that particular. As the accused when arraigned said he had no objection to any member of the court, and knew of no reason why the court should not proceed with his trial, it is manifestly too late to raise the objection, in view of our decision in *Mullan* v. *United States*, 140 U. S. 240, in which we held that when the commander-in-chief of a squadron not in the waters of the United States, convenes a court-martial, more than one-half of whose members are juniors in rank to the accused, the courts of the United States will assume, when his action is attacked collaterally, that he properly exercised his discretion, and the trial of the accused by such a court could not be avoided, without inconvenience to the service. The rank and number of the members of a court-martial must necessarily be, and is, left somewhat to the discretion of the officer convening the court. There is nothing in this case to indicate an abuse of discretion, or that a larger number of officers might have been convened without injury to the service, although if the accused had taken prompt advantage of the defect it might have been necessary to show that a larger number could not have been obtained. His expressed satisfaction with the court as constituted was a clear waiver of any objection to its personnel.

4. The objection that the court-martial proceedings are void because its sentence was not approved or confirmed by Rear Admiral Bell, who convened the court, is answered by articles 19 and 20 of the act of July 17, 1862, for the better government of the Navy. 12 Stat. 605. The first of these articles provides that "all sentences of courts-martial which shall extend to the loss of life shall require the concurrence of two-thirds of the members present," as well as confirmation by the President. "All other sentences may be determined by a majority of votes, and carried into execution, on confirmation of the commander of the fleet, or officer ordering the court, except such as go to the dismission of a commissioned or warrant officer, which are first to be approved by the President of the United States." As the sentence in this case extended to a dismissal from the service, no confirmation was necessary by Admiral Bell, whose duty was discharged by forwarding the papers to the President.

Petitioner relies upon article 20 of the same act, which declares that "Every officer who is by this act authorized to convene courts-martial shall have power on revisal of its proceedings to remit or mitigate, but not to commute the sentence of any such court, which by this act he is authorized to approve and confirm." Obviously, this article extends only to such sentences as the convening officer is authorized to approve and confirm, and has no application where the punishment of dismissal is imposed.

5. The last point made is that the court-martial proceedings are void because the sentence was never confirmed by the President of the United States. The record shows that the proceedings of the court-martial were forwarded and submitted to the Secretary of the Navy for the action of the President, under article 19, above quoted; that the papers were submitted to some officer connected with the Navy Department, who made a statement, termed a "brief," of the findings of the court, and added the following: "The evidence in the case is positive and clear, and the findings of the court sustained

thereby. Lieut. Comdr. Bishop produces no witnesses in his behalf, and the statement made by him to the court is lame throughout. There is no recommendation by the court for clemency."

December 3, 1867, the Secretary of the Navy certified that the case was submitted to the President for his action in accordance with article 19 of the above act, to which are added the words: "Approved: Andrew Johnson."

On February 8, 1868, the Secretary of the Navy addressed to the petitioner a letter notifying him of the sentence of court-martial, and added as follows: "The sentence of the court in your case *having been approved by the President,* you are hereby dismissed from the Navy service," etc. It is difficult to see how the personal approval of the President could appear more clearly than in this case. In *United States* v. *Fletcher,* 148 U. S. 84, there appeared only the certificate of the Secretary of War that the proceedings of the court-martial were forwarded to the Secretary of War for the action of the President, and that "the proceedings, findings and sentence are approved;" but it was held that the order was valid, though it did not appear that the President personally examined the proceedings and approved the execution of the sentence. Criticism was made in that opinion of *Runkle* v. *United States,* 122 U. S. 543, upon the ground that the circumstances of that case were so exceptional as to render it an unsafe precedent in any other. It was held in that case that there was no sufficient evidence that the action of the court-martial was approved, and it followed that the officer was never legally dismissed from the service. No such criticism can be made here, as it not only appears from the letter of February 8 that the sentence of the court had been approved by the President, but his approval distinctly appears at the foot of the brief.

We find nothing in this case of which the petitioner has any just reason to complain. The proceedings of the court-martial were conducted with a substantial, if not a literal, conformity

to the law, and we must presume, at least, that there was sufficient evidence to support the sentence. While drunkenness is not ordinarily considered as criminal, the intoxication of a naval officer while on duty is a gross breach of discipline, and liable to be attended by very serious consequences. Congress evidently acted with forbearance and generosity in reinstating petitioner in the service after a lapse of three years, and thereby condoned the offense. But it has never directly or indirectly intimated that petitioner was entitled to pay during the suspension.

The judgment of the Court of Claims is

*Affirmed.*