# UNITED STATES v. SMITH.

### APPEAL FROM THE COURT OF CLAIMS.

No. 184.  Argued March 15, 1905—Decided April, 3, 1905.

The word "arrest" as employed in Article 43 of § 1624, Rev. Stat., requiring service of the charge on which the accused is to be tried by court martial, does not relate to the preliminary arrest or detention of an accused person awaiting the action of higher authority to frame charges and specifications and order a court-martial, but to the arrest resulting from preferring the charges by the proper authority, and the convening of a court-martial.

The provision in Article 38 of § 1624, Rev. Stat., that no commander of a fleet or squadron shall convene a general court-martial without express authority from the President was enacted in 1862 and will be construed as intending to apply to waters within the continental limits of the United States, and not to waters in the territory beyond the seas acquired since the passage of that act, and the acquisition whereof was not contemplated at that time.

ON May 26, 1899, John Smith was serving under enlistment as a fireman of the first class on board the United States naval vessel Yorktown, then at anchor in Iloilo harbor, Philippine Islands.  On the date named Smith was reported to the commanding officer of the Yorktown as having refused to do duty, and consequently such officer ordered him "put under sentries as a prisoner in single irons for safekeeping to await trial by a general court-martial."  Subsequently, on June 30, 1899, Rear Admiral Watson, the Commander in Chief of the United

States naval force on the Asiatic station, convened a general court-martial, to meet on July 3, 1899, for the purpose of trying accused persons who might be legally brought before the court, and on the same day a charge was preferred against Smith, by the Rear Admiral, accompanied with a specification, for refusing to obey a lawful order of his superior officer. Smith, who as already stated had been placed under arrest on May 26, 1899, was served on July 1, 1899, with a copy of the charge and specification which had been preferred against him and an extra watch was put over him as well as over other prisoners who were being held for trial. On July 5, 1899, Smith was sent under guard before the court-martial. He was tried, found guilty and sentenced "To be confined in such place as the Secretary of the Navy may direct for a period of one year, to perform extra police duties during such confinement, to lose all pay that may become due him during such confinement, except the sum of three dollars ($3.00) per month for necessary prison expenses, and a further sum of twenty dollars to be paid him at the expiration of his term of confinement, when he shall be dishonorably discharged from the United States Navy."

The term of imprisonment prescribed in the sentence was somewhat mitigated by the Secretary of the Navy. Thereafter, on being released, Smith sued in the Court of Claims to recover the pay which would have been earned by him had he been entitled to receive the same during the period covered by the sentence. The right to recover was based on the averment that a copy of the charge had not been served on Smith when he was originally put under arrest on May 26, 1899, it being claimed that for this reason the judgment of the court-martial was void. After finding the facts as above recited the Court of Claims concluded, as matter of law, that the claimant was entitled to recover, and from the judgment entered upon such finding the Government appealed.

*Mr. Edwin P. Hanna,* Solicitor of the Navy Department,

and *Mr. Assistant Attorney General Pradt,* with whom *Mr. Special Attorney Felix Brannigan* was on the brief, for the United States:

The delivery to the prisoner on July 1, 1899, of the true copy of the charge and specification of the offense committed on May 26, 1899, and for which he was tried, convicted and sentenced on July 5, 1899, by a general court-martial, was a sufficient compliance with Article 43 of the articles which govern the Navy of the United States. Rev. Stat. § 1624.

The judgment appealed from is founded upon an unreasonable interpretation of Article 43. "It rests upon a construction which is too literal." *United States* v. *Finnell,* 185 U. S. 236, 242. It well illustrates the maxim, "*Qui hæret in litera, hæret in cortice.*"

The Court of Claims has no jurisdiction whatever to review the lawful sentence of any duly convened court-martial, nor to impugn by doubts the verity of its record or justice of its sentence. In this country courts-martial are courts of record —so far, at least, as the statute requires records to be made and preserved. Like our inferior courts they derive their jurisdiction from and are regulated by Congress, *Dynes* v. *Hoover,* 20 How. 65, 82; and no civil court can review their proceedings or sentences, *Ex parte Watkins,* 3 Pet. 193. They have general jurisdiction of all military offenses. The act of Congress, passed more than a hundred years ago, requires the president of every court-martial to administer an oath to the judge advocate that he will "*keep a true record of the evidence given to and the proceedings of this court;* . . ." Art. 36, 2 Stat. 50; Art. 40, p. 283, Rev. Stat; *Davis* v. *Township of Delaware,* 41 N. J. L. 55.

As to time within which charges should be delivered before court-martial see *United States* v. *Insurgents,* 2 Dall. 334, 341; *United States* v. *Wood,* 3 W. C. C. 440; *United States* v. *Curtis,* 4 Mason C. C. 232; *Johnson* v. *Sayre,* 158 U. S. 109, 118. Court-martial jurisdiction cannot be inquired into on collateral proceedings. *Ex parte Walkins,* 3 Pet. 193, 201; *Keyes* v. *United States,* 15 C. Cl. 532, 541; *S. C.,* 109 U. S. 336; *Johnson* v.

*Sayre, supra; Carter* v. *McClaughry,* 183 U. S. 365; *Swain* v. *United States,* 165 U. S. 553, 565.

Neither the sentences of these military courts, nor the action of the Admiral or the Secretary of the Navy or of the President upon them, should ever be regarded as void by that civil court, except perhaps upon the very clearest jurisdictional grounds when the court-martial case was *coram non judice. Wise* v. *Withers,* 3 Cr. 331, 337. When general courts-martial are convened by the Secretary of the Navy, or by the Commander in Chief of a fleet or squadron, in contemplation of law they are convened by the President himself as Commander in Chief of the Navy. *Wilcox* v. *Jackson,* 13 Pet. 498, 513; *Eliason* v. *United States,* 16 Pet. 291, 302; *Williams* v. *United States,* 1 How. 290, 297. He alone is "the court of last resort," and all officers and seamen may appeal to him.

The prisoner was tried according to immemorial usage. Art. 5, Reg. & Inst. His Majesty's Service, 1772, p. 46; Rules for Reg. of Navy of United Colonies, Nov. 28, 1775; Act of Government of Navy, 1799, 1 Stat. 709; Genl. Reg. Navy, 1841, Arts. 479, 482; 3 Am. Archives, 1775, 4th series, p. 1930; Navy Reg. Art. 1077.

The provision in the statute relied upon by appellee that the court-martial could not be convened because in waters of the United States except by authority of the President does not apply. Art. 38, act of 1862, was passed before the acquisition of the Philippines was thought of and the statute must be construed as intended by Congress. *Smith* v. *Townsend,* 148 U. S. 494; *Platt* v. *Un. Pac. R. R.,* 99 U. S. 64; *Hadden* v. *Collector,* 5 Wall. 112. The act was not intended to apply to such remote waters. *Irwin* v. *United States,* 38 C. Cl. 87; *United States* v. *Thomas,* 195 U. S. 418; *Downes* v. *Bidwell,* 182 U. S. 244.

*Mr. John Spalding Flannery,* with whom *Mr. Frederic D. McKenney* was on the brief for appellee:

*Johnson* v. *Sayre,* 158 U. S. 109, does not apply. Under

Article 43 "the person accused shall be furnished with a true copy of the charges, with the specifications, at the time he is put under arrest; and no other charges than those so furnished shall be urged against him at the trial." This rule was therefore inexcusably violated. It necessarily follows that if the accused can be tried only upon the charge furnished at the time of his arrest, if no charges were furnished him at the time of his arrest for trial, on May 26, 1899, there were none in existence upon which he could have been legally tried on July 5, 1899. Section 1034, ch. 23, Naval Regulations, 1896; *Dynes* v. *Hoover*, 20 How. 65, 81; *McClaughry* v. *Deming*, 186 U. S. 49, 62; *Keyes* v. *United States*, 109 U. S. 336, distinguished. See *Ex parte Reed*, 100 U. S. 13, 23; *Runkle's Case*, 122 U. S. 543, 555; Art. 43, § 1624, Rev. Stat. § 2, Art. 1778; § 4, Art. 1805; § 6, Art. 1819, Nav. Reg. 1896.

There was no waiver of any jurisdictional defect. *Bennecke* v. *Insurance Co.*, 105 U. S. 359; Cooley's Const. Lim., 7th ed., 252.

As to meaning of charges and arrest in § 43 see British Art. of War, 1765, §§ 15–18; Massachusetts Articles, 1775; American Articles, 1775, 1776, 1786; Winthrop's Military Law, 1896, 1475, 1483, 1500, 1506.

The court-martial was held in waters of the United States and could not be convened except by order of the President. Art. 38, § 1624, Rev. Stat.

Under the decisions in the Insular cases it seems that there can be no doubt that after the ratification of the treaty of peace between the United States and Spain, on April 11, 1899, the Territory of Porto Rico and the Philippines ceased to be foreign land and became territory of the United States. *De Lima* v. *Bidwell*, 182 U. S. 1; *Dooley* v. *United States*, 182 U. S. 222, 234; *S. C.*, 183 U. S. 151; *Fourteen Diamond Rings* v. *United States*, 183 U. S. 176; *Huns* v. *Steamship Co.*, 182 U. S. 392; *Gonzales* v. *Williams*, 192 U. S. 1, 14; Nav. Reg., 1896, § 4, Art. 1064; § 1, Art. 1720; § 1, Art. 1773; Art. 67, Rev. Stat. 1342; November issue, 1902, Green Bag, 502;

Military Laws Doc. 545, H. R. 56th Cong., 2d Sess., 677; Doc. 244, H. R. 1st Sess., 26th Cong.; Sen. Rep. 1442, 57th Cong., 1st Sess.; Sen. Rep. 805, 58th Cong., 2d Sess.

MR. JUSTICE WHITE, after making the foregoing statement, delivered the opinion of the court.

Article 43 of section 1624 of the Revised Statutes, upon which the Court of Claims based its legal conclusion that the action of the court-martial in question was void because the charge and specification were not served upon the claimant at the time of the original arrest, reads as follows: "The person accused shall be furnished with a true copy of the charges, with the specifications, at the time he is put under arrest."

It is conceded by the findings that at once when the charge and specification were formulated by Rear Admiral Watson and the court-martial was ordered to be convened, a copy of the charge and specification was served upon Smith. It is also established by the findings that no objection as to tardiness of service was made at the time of trial. Conceding, *arguendo* solely, and without so deciding, that under these circumstances the objection as to the lateness of the service was jurisdictional and could be collaterally inquired into, we think the contention is wholly devoid of merit. Nearly ten years before the trial in question was had, in the year 1890, the Secretary of the Navy submitted to the Attorney General the question of whether the arrest referred to in Article 43 related to the preliminary arrest which might be consequent upon the commission of an offense, or applied to the arrest made after charges had been formulated and as court-martial ordered. The Attorney General advised that the word arrest as employed in Article 43 did not relate to the preliminary arrest or detention of an accused person awaiting the action of higher authority to frame charges and specifications and order a court-martial, but to the arrest resulting from the preferring of the charges by the proper authority and the conven-

ing of a court-martial. 19 Opinions of Attorney General, 472. The reasoning by which the Attorney General reached the conclusion just stated we think was absolutely conclusive. Doubtless the opinion became the rule of practice in the Navy, and the construction affixed by the Attorney General to the statute was sanctioned by this court in *Johnson* v. *Sayre*, 158 U. S. 109, and such construction has been reiterated in an opinion announced this day. *Bishop* v. *United States*, 197 U. S. 334.

Whilst these considerations dispose of the contentions raised and passed on below, a new ground for reversal was urged at bar, founded on Article 38 of section 1624 of the Revised Statutes. That Article reads as follows:

"Art. 38. General courts-martial may. be convened by the President, Secretary of the Navy, or the Commander in Chief of a fleet or squadron; but no commander of a fleet or squadron in the waters of the United States shall convene such court without express authority from the President."

Although it is not denied that Rear Admiral Watson was a commander of a fleet within the meaning of that expression as employed in Article 38, it is insisted that as he convened the court-martial while in Manila Bay, about six weeks after the treaty with Spain by which the Philippine Islands were acquired by the United States, therefore the fleet or squadron under his command was "in the waters of the United States," within the meaning of those words as employed in the enactment in question, and there was no power in the Commander in Chief to convoke a court-martial without express authority from the President, which is not found to have been given. This objection, if well taken, is jurisdictional, but in our judgment it is without merit; and we reach this conclusion wholly irrespective of the status of the Philippine Islands.

The clause in question was originally enacted in 1862, before even the acquisition of Alaska, and was intended, we think, to apply to those waters within what was termed by Congress in the act of March 3, 1901, 31 Stat. 1107, 1108, the continental

limits of the United States.   In other words, the provision in question did not take into view the dominion or sovereignty of the United States over territory beyond the seas and far removed from the seat of government, but contemplated waters within the United States in the stricter and popular sense of the term.   Looking to the language used, in the light of the surrounding circumstances and the purpose which it was intended to accomplish, *Platt* v. *Union Pacific R. R.,* 99 U. S. 48, 64, it is, we think, manifest that the prohibition against the convocation by the commander of a fleet or squadron of a general court-martial, without the previous authorization of the President, was intended to be operative only when the fleet or squadron was in a home port, as above defined.   That is to say, that Congress contemplated the necessity of an order from the President when the circumstances supposed to require the convening of the court-martial could be with facility submitted to the President for his action in the premises.   To give a broad meaning to the expression "waters of the United States," as employed in Article 38, by construing those words as referring not only to the home waters but to far distant waters, would, we think, defeat the plain purposes of Congress and seriously impair, if not destroy, an important power vested in the commander of a fleet or squadron when at distant stations, remote from the home country.   Certainly, if the remoteness from the continental limits of the United States is immaterial and the restriction of Article 38 is applicable to the commander when his fleet or squadron is within waters thousands of miles removed from the boundaries of the United States, in the restricted sense of that term, no good reason is apparent why the commander of a fleet or squadron should not have been forbidden, without the leave of the President, to convoke a general court-martial, irrespective of where his fleet or squadron might be situated.

*Judgment reversed.*