## UNITED STATES ex rel. VISCARDI v. MacDONALD, Rear Admiral, et al.

(District Court, E. D. New York. March 4, 1920.)

1. **Army and navy ⬅44(2)—Inactive member of naval reserve is not subject to court-martial.**

Under Act Aug. 29, 1896, c. 417, 39 Stat. 587, subjecting the naval reserve force to laws governing the navy only during such time as they may by law be required to serve in the navy, the time they may be required is not the full period of enlistment, but only the time they are actually in service during an emergency; so that a member of such force cannot be tried by court-martial after release from active service, even for an offense committed while in active service.

2. **Army and navy ⬅36—Naval officer, after discharge, can be tried for crime in service.**

A person discharged from the naval service can be prosecuted under the criminal laws of the United States for any act during the period of his active duty made a crime under the general laws of the United States, unless he has been previously placed in jeopardy.

3. **Habeas corpus ⬅16—Can release naval reserve officer wrongfully recalled into service.**

While ordinarily habeas corpus is not available to inquire into the motive for regular orders by which a man became subject to military discipline, the court can determine in such proceedings that the release of an officer of naval reserve force from active duty through the termination of any war necessity relieved him from such duty, unless a new national emergency arose, though the United States was still technically at war.

4. **Army and navy ⬅44(1)—Court-martial has jurisdiction over bribery by naval officer.**

Though a specification that a member of the navy attempted to bribe a petty officer in the navy to obtain the transfer of a seaman to shore duty, without alleging that it was a fraud on the United States, does not bring the charge within Act July 17, 1862, c. 204, art. 7, subd. 6, 12 Stat. 600, subjecting to court-martial any person in the navy who shall attempt a fraud against United States, or any of the other subdivisions of that article, as article 8 of the same chapter providing that offenses by persons in the navy not specified in other articles shall be punished as a court-martial shall direct, is broad enough to give the court-martial jurisdiction.

Habeas corpus proceedings by the United States, on relation of Joseph Anthony Viscardi, against John D. MacDonald, Rear Admiral, and another. Relator discharged.

Slade & Slade, of New York City, for relator.

Leroy W. Ross, U. S. Atty., and Charles J. Buchner, Asst. U. S. Atty., both of Brooklyn, for defendants.

CHATFIELD, District Judge. The relator enlisted in 1917 in the naval reserve. During the year 1918 he was taken into custody pending inquiry into an alleged charge of bribery, but as the period of detention ran over 30 days (navy regulation) without calling a court-martial and the presentation of formal charges, he was restored to active duty and served until July 17, 1919, when he was released from active duty with the navy and given a certificate which was equivalent to an honorable discharge, except that in time of war or national emergency he could—

"be required to perform active service in the navy throughout the war or until the national emergency ceases to exist."

When on duty in the navy he received the pay of a member of the navy of similar rank. When released from duty in the navy, he received the payment of $1 a month.

[1] The different branches of the naval reserve force, including the fleet naval reserve, the naval reserve, the naval reserve flying corps, the naval auxiliary reserve, the naval coast defense reserve, and the volunteer naval reserve, were established by chapter 417 of the Laws of 1896. 39 Stat. 587. Members of the naval reserve are commissioned for life; members of the volunteer naval reserve enlist for four years. Members of the naval reserve force are—

"subject to the laws, regulations, and orders for the government of the regular navy only during such time as they may by law be required to serve in the navy in accordance with their obligations," etc.

It is evident, therefore, that the rules of law governing court-martials in the navy, in so far as they describe offenses, can be applied to the acts of members of any one of the classes of the naval reserve force only when the offense is committed "during such time as they may by law be required to serve in the navy." The record upon the present application shows that the offense charged was committed while the relator was upon active service in the navy, and it is unnecessary to consider whether a member of the naval reserve could be charged with conduct unbecoming an officer, and tried by court-martial, for some lapse during other periods than when in active service "in time of war or national emergency."

But the words "during such time as they may by law be required to serve in the navy" are capable of two constructions: (1) They may mean during the entire period within which an emergency may arise for which a person can be called into active service (such as for life in the case of the naval reserve, or for four years in the case of a voluntary enlistment). (2) They may mean simply the period when the person is actually performing active duty in the navy "during the time of war or national emergency."

The four-year enlistment of the relator, Viscardi, has not yet expired, and, if we take the former interpretation of these words, he is

still liable to trial by court-martial for any offense defined by the regulations, applicable to the particular status in which he is at the time. If we take the latter construction, he would be liable to court-martial only for offenses defined in such a way as to be applicable to a man on active duty. The difference must be kept in mind, even though in the case at bar the relator is charged with an offense committed while on active duty, for the reason that, as construed by the courts in this district, a member of the volunteer naval reserve is no longer subject to military law after release from active duty.

The Attorney General, in an exhaustive opinion dated July 10, 1919, has held that a person discharged from the naval service, either in the United States navy or the United States naval reserve force, cannot be brought to trial before a naval general court-martial, or otherwise punished, for an offense (committed during active service) after he has been discharged from the navy or released from active duty therein and within two years after the date of the commission of such offense. All decided cases, so far as known, are recited in this opinion.

[2] Prosecution for any act made a crime under the general laws of the United States during the period of his active duty could still be had under the criminal laws of the United States, unless the man had been previously placed in jeopardy. In Bishop v. United States, 197 U. S. 334, 25 Sup. Ct. 440, 49 L. Ed. 780, and in United States v. Smith, 197 U. S. 386, 25 Sup. Ct. 489, 49 L. Ed. 801, it was held that arrest pending hearing, or pending the action of a board of inquiry, would not be construed as having placed the man in jeopardy, in case he should be temporarily released and thereafter brought to trial by court-martial, and would not be in contravention of paragraph 1205 of the Navy Regulations (1865), reading as follows:

"An offense committed at any one time, for which a person in the navy shall have been placed under arrest, suspension or confinement, and subsequently entirely discharged therefrom by competent authority, or for which he shall have been otherwise fully punished, is to be regarded as expiated, and, no further martial proceedings against him for the offense itself are ever afterwards to take place," etc.

In two cases recently decided in this district the relator was subject to trial by court-martial during the time within which he was still on active duty, and after being freed from preliminary arrest pending inquiry; but no such court-martial was instituted until after release from active duty with the navy.

In the case of United States ex rel. Santantonio v. Warden or Keeper of Naval Prison, 265 Fed. 787, the relator obtained by habeas corpus his release from court-martial at the hands of the navy for an offense alleged to have been committed during active service. The court held his release from active service equivalent, so far as the charges of misconduct were concerned, to an honorable discharge before arrest on court-martial. The arrest of the relator occurred within the four-year period for which he had enlisted as a member of the volunteer naval reserve; but he had not been recalled into active duty, and

was in effect a civilian subject to recall into active service only "in time of war or national emergency." Decision by Thomas, J., November 26, 1919.

In the case of United States ex rel. Goodrich v. MacDonald, no written opinion (decision by Manton, C. J., sitting in the District Court, February 25, 1920), the relator was discharged because he had been released from active duty in the navy, with a certificate equivalent in these respects to an honorable discharge, prior to the time when an attempt was made to recall him into active service, for the purpose of trial by court-martial, and then to place him on trial as if no discharge had been granted.

In the case at bar the relator was also recalled into active service for use as a witness in the Santantonio Case, and to answer any charge that might be brought against himself, although the avowed purpose of his recall into active service was stated to be because his discharge had been obtained through an error or oversight in passing upon his application.

[3] Ordinarily a writ of habeas corpus would be of no avail to inquire into the motive of the orders by which a man became subject to military discipline, provided the proceedings were regular and the exercise of military jurisdiction showed proper observance of the statutes governing the case. But the record in the present case shows that the relator had been released from active duty through the termination of any war necessity under which his duty was required. So far as he was concerned the time of war was ended, and although the United States is still technically at war, so as to make the laws creating the voluntary naval reserve capable of use for the purposes of the war with Germany, it should be held that the "time of war" with respect to the relator was terminated by his release from active duty with the equivalent of an honorable discharge, unless a national emergency makes it necessary to establish another time of war during which his services are needed.

We have therefore a situation similar to that disposed of by the decision in the Goodrich Case, supra, and that decision must be held to have established the law for this district, unless for some reason, evidently overlooked in that case, a different ruling is made necessary.

[4] By the provisions of chapter 204, art. 7, subd. 6, of the Laws of 1862 (12 Stat. 600), any person in the navy who "shall execute or attempt or countenance any fraud against the United States" is subject to punishment by court-martial. The three specifications of the pending charge against the relator, Viscardi, set out, in substance, an attempt, by the payment of money, to bribe a chief boatswain's mate in the navy to obtain illegally and unlawfully the transfer of a seaman from sea duty to shore duty. No one of the charges in words alleges this as a fraud upon the United States, although each one of them could be construed as working a fraud upon the United States.

No one of the subdivisions of article 7, or of the other articles of chapter 204 of the laws of 1862, exactly defines in words any act

charged as an offense against Viscardi.  Article 8, however, of this chapter, is as follows:

"All offenses committed by persons belonging to the navy, which are not specified in the foregoing articles, shall be punished as a court-martial shall direct."

This provision is broad enough to give a court-martial jurisdiction over a member of the volunteer naval reserve during the time when he is subject to "the laws, regulations and orders for the government of the regular navy," and we are therefore brought back to the proposition decided in the Santantonio and Goodrich Cases, supra, which in effect hold that the four-year period of enlistment is not the measure of the time during which a member of the naval reserve force can be subjected to court-martial as a part of the laws, regulations, and orders for the government of the regular navy; that is, that such four years was not the measure of the time such "as they may by law be required to serve in the navy."

These decisions in effect hold that the release from active duty is equivalent to an honorable discharge, after which a man cannot be recalled into service, except upon the intervention of some actual continuation of service in time of war or of national emergency.  They also hold, in accordance with the opinion of the Attorney General, supra, that after such release a member of the naval reserve force cannot be brought to trial by court-martial for an offense alleged to have been committed prior to his release.  They also hold that the charge for which the relator, Viscardi, is now held on court-martial, is not within the provisions of chapter 67 of the Laws of 1863 (12 Stat. 696), entitled "An act to prevent and punish frauds upon the government of the United States," by section 2 of which law it is enacted:

"That any person heretofore called or hereafter to be called into or employed in such forces or service, who shall commit any violation of this act and shall afterwards receive his discharge, or be dismissed from the service, shall, notwithstanding such discharge or dismissal, continue to be liable to be arrested and held for trial and sentence by a court-martial, in the same manner and to the same extent as if he had not received such discharge or been dismissed."

Giving full effect to these decisions, therefore, and recognizing the possible dangers to personal liberty involved in the trial of a man in effect a civilian by a military court, at a time when the man is not lawfully in service and a part of the military forces, the present writ of habeas corpus should be sustained, and the relator discharged.