ROBERTSON, Commissioner of Patents, et al. v. UNITED STATES ex rel. BAFF.

(Court of Appeals of District of Columbia. Submitted October 16, 1922. Decided December 4, 1922.)

No. 3801.

1. Mandamus ⬤⇒143(1)—Disbarment of solicitor is not final where hearing for reinstatement has been granted, and mandamus for reinstatement premature.

An order disbarring a solicitor of patents from further practice in the Patent Office has not become final where, after its approval by the Assistant Secretary, the solicitor applied for reinstatement, and a hearing on such application by the Commissioner had been directed by the Assistant Secretary, so that a petition for mandamus to compel the reinstatement was prematurely filed.

2. Patents ⬤⇒97—Commissioner's hearing and determination of charges against solicitor and Secretary's approval are judicial functions.

Under Rev. St. § 487 (Comp. St. § 750), authorizing the Commissioner of Patents to refuse to recognize any person as a patent agent for gross misconduct, but requiring the reasons for such refusal to be duly recorded and to be subject to the approval of the Secretary of the Interior, the hearing and determination of charges against the solicitor of patents by the Commissioner and the approval of the Commissioner's findings by the Secretary are judicial functions.

3. Patents ⬤⇒97—Congress can authorize delegation of judicial duties, which it can delegate to officials.

If Congress had the right to vest the Commissioner of Patents and the Secretary of the Interior by Rev. St. § 487 (Comp. St. § 750), with the judicial functions of hearing and determining charges against a solicitor of patents, it also had the power to authorize the Secretary to delegate such functions to an assistant.

4. Patents ⬤⇒97—Congress has authorized delegation of Secretary's duty to approve disbarment.

Rev. St. § 439 (Comp. St. § 667), providing that the Assistant Secretary of the Interior shall perform such duties in the department as shall be prescribed by the Secretary, is not limited to merely administrative duties, but authorizes the Secretary to delegate to the assistant the judicial duty of approving the findings of the Commissioner of Patents in proceedings for the disbarment of a patent solicitor.

5. Statutes ⬤⇒190—Language is controlling, unless ambiguous or contrary to intent manifested by enactment.

Unless the language of a statute is vague or ambiguous, or conveys a meaning that is absurd or in contradiction of other parts of the statute, or in contravention of the legislative purpose made evident by the enactment itself, there is no room for construction, and the meaning of its terms must be accepted as manifesting the legislative intent.

Appeal from the Supreme Court of the District of Columbia.

Petition for mandamus by the United States, on the relation of William E. Baff, against Thomas E. Robertson, as Commissioner of Pat-

⬤⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ents, and another. From a judgment directing the issuance of the writ after demurrer to the amended answer was sustained, and the respondents declined to make further amendment, respondents appeal. Reversed and remanded.

C. Edward Wright and E. S. Booth, both of Washington, D. C., for appellants.

A. L. Newmeyer and Max Rhoade, both of Washington, D. C., for appellee.

Before SMYTH, Chief Justice, ROBB, Associate Justice, and SMITH, Judge of the United States Court of Customs Appeals.

SMITH, Acting Associate Justice. William E. Baff, enrolled as an attorney entitled to practice in the office of the Commissioner of Patents, was charged with gross misconduct in his capacity as such attorney, and the Commissioner, in an order setting out the charges, cited Baff to show cause why he should not be debarred from practice in the United States Patent Office.

Baff appeared on the hearing of the order to show cause, and objected to the jurisdiction of the Commissioner on the ground that the remedy against him by those aggrieved, was a civil suit rather than disbarment. He also claims that he made other objections to the hearing of the charges before the Commissioner, but it affirmatively appears that his objections, whatever they may have been, were overruled, and that a hearing of the charges was had. That hearing resulted in an order of disbarment which was approved on the 18th of March, 1921, by the Assistant Secretary of the Interior.

The attorney then applied in writing to the Commissioner of Patents for reinstatement with all the rights and privileges enjoyed by him prior to the order of disbarment on the ground, first, that he had not been permitted to confront or cross-examine the witnesses against him; second, that the order of disbarment had been approved by the Assistant Secretary and not by the Secretary of the Interior, as required by the provisions of section 487 of the Revised Statutes (Comp. St. § 750); third, that Commissioner of Patents Coulston, who presided at the hearing to show cause, was prejudiced against him and therefore disqualified from passing on the charges.

Thomas C. Robertson, the successor of Coulston as Commissioner, held that the application for reinstatement should have been addressed to the Secretary of the Interior, and he therefore refused to reinstate the applicant for want of jurisdiction, but was careful to state that if the matter was referred to him by the Secretary, a recommendation as to the application would be made. Whereupon Baff on the 10th of June, 1921, applied to the Secretary of the Interior for reinstatement, with the result that the case was on the 18th of August, 1921, remanded by the Assistant Secretary of the Interior to the Commissioner of Patents. The remand ordered that a hearing be granted to the relator for the purpose of enabling him to establish his claim that at the trial of the charges he had objected to the introduction of affida-

vits and had demanded the right to cross-examine the witnesses against him. A copy of the remand was served on the attorneys for the relator and a hearing in conformity therewith was tendered on the 29th of August, 1921.

Notwithstanding that tender, however, the relator elected not to avail himself of the opportunity to be heard and on the 29th day of August, 1921, he filed his petition for mandamus praying for a writ directing the respondents to vacate the order of disbarment and to reinstate him as a registered attorney of the Patent Office. The respondents by their amended answer pleaded in defense the facts above recited to which answer the relator demurred. The demurrer was sustained, and, the respondents having declined to make any further amendment, judgment was entered directing the writ to issue as prayed for.

From that judgment this appeal was taken, and a reversal is asked for on the ground that the court below erred, first, in issuing the writ before disbarment of the relator was finally ordered by the respondents and while the proceedings for disbarment were still pending before the Commissioner; second, in ruling that the Assistant Secretary had no power to approve the order of disbarment.

[1] The admitted allegations of the petition for mandamus and the averments of the answer, which on demurrer must be accepted as true, establish in our opinion that no final conclusion was reached by the respondents as to the disbarment of the relator and that the proceedings for that purpose were still pending before the Commissioner of Patents. It is true that an order for disbarment was actually made by Commissioner Coulston, and that that order was approved by Assistant Secretary Hopkins. It is also true, however, that after that order was made, the relator applied to the Secretary of the Interior for reinstatement on the ground that his disbarment was unlawful for the reasons stated in his application. That application was a direct attack on the decision of the Commissioner and the approval of the Secretary. It had for its purpose the vacation of the order of disbarment and had the attorney taken advantage of the order remanding the case to the Commissioner and of the tender formally made to him by the latter, the hearing ordered by the remand might well have resulted in a retrial of the whole matter. The attorney having applied to the Secretary for reinstatement on the ground of irregularities in the proceedings against him, the order of the Commissioner stood suspended while the application or motion to vacate, modify, or correct it was pending, and the relator had no ground for complaint until his application had been denied and the order of disbarment had become final. The filing of the petition for mandamus was therefore premature, and on that ground alone the judgment appealed from should be reversed.

However, to avoid delay and expense, as well as the incumbering of court calendars with further litigation as to the vital question raised by the appeal, we think it proper to determine whether the Assistant Secretary of the Interior has the power to approve an order of disbarment. The proceedings against Baff were had under section 487 of the Revised Statutes, which section reads as follows:

285 F.—58

"Sec. 487. For gross misconduct the Commissioner of Patents may refuse to recognize any person as a patent agent, either generally or in any particular case; but the reasons for such refusal shall be duly recorded, and be subject to the approval of the Secretary of the Interior."

The appellee contends that the official action contemplated by that section is judicial in nature, and that the Secretary's approval of an order of the Commissioner debarring an attorney from practice is a judicial attribution. It is further argued that a judicial function cannot be delegated, and that therefore, even if authorized by the Secretary of the Department, the Assistant Secretary of the Interior had no right whatever to approve an order of disbarment.

[2] The authority to hear and determine an issue of fact, or a mixed question of law and fact, upon evidence, written or oral, coupled with the power after such hearing and determination to render a decision affecting the material rights and interests of any one, is a judicial function and such hearing, determination and decison are characteristic of judicial proceedings. Marine, Collector, v. Lyon et al., 65 Fed. 992, 994, 13 C. C. A. 268; Stone, Collector, v. Whitridge, White & Co., 129 Fed. 33, 36, 64 C. C. A. 47; Sinking Fund Cases, 99 U. S. 700–761, 25 L. Ed. 496; Runkle v. United States, 122 U. S. 543, 555, 7 Sup. Ct. 1141, 30 L. Ed. 1167.

The Commissioner of Patents was authorized by section 487 to hear and determine the issues of fact raised by the charges against Baff and upon the evidence submitted to him to render a decision affecting the material rights and interests of the accused. We must therefore hold that, in hearing the charges, determining the facts and deciding the case the Commissioner was performing a judicial duty and that the proceedings before and by him were judicial in character.

The review and approval of the Secretary of the Interior, designed as they are to correct errors or mistakes affecting the rights of patent attorneys, take the place of the usual judicial safeguards provided for established courts and, completing as they do the whole proceeding, must be regarded as judicial acts.

[3] That Congress had the right to vest the Commissioner and the Secretary of the Interior with the powers specified in section 487 is not questioned, but it is strenuously contended that, as such powers were judicial, they could not be delegated.

As an abstract proposition it is true that judicial authority cannot be delegated; but can it be said, no constitutional inhibition intervening, that Congress, having the power to clothe an executive or administrative officer with judicial functions, has no power to authorize their delegation? The organic law of the land might have limited the exercise of judicial faculties to judges learned in the law, or it might have prohibited the delegation of such faculties once vested; but if it imposed no such limitation or prohibition, and it is not claimed that it did, can the judicial department of the government restrict the legislative will to bounds not constitutionally defined? We think not.

If Congress could by statute legally authorize the Commissioner of Patents and the Secretary of the Interior to hear, determine, and finally decide disbarment cases, it could, by statute, legally empower those

officials to delegate the performance of such duties to a designated subordinate.

[4] Section 439 (Comp. St. § 667) provides that the Assistant Secretary of the Interior shall perform such duties in the Department of the Interior as shall be prescribed by the Secretary or may be required by law. The relator insists that the duties which may be assigned to the Assistant Secretary under that provision are administrative, not judicial, duties, and that consequently his approval of the disbarment order was extraofficial and void. We cannot agree with that construction, inasmuch as it reads into the statute language which Congress did not use to make manifest its legislative intention. The section says that the Assistant Secretary shall perform such *duties*, not such administrative duties, as the Secretary shall prescribe, and, having said that, it does not lie with the courts to legislate into the law a word which Congress carefully omitted. The clear intention of the section was to permit the Secretary to relieve himself of those duties to which in his judgment he could not give proper personal attention, and that purpose might well be defeated, in part at least, by the introduction of what would be nothing less than a judicial, if not an injudicious, amendment. Such legislation is in the interest of governmental efficiency, and its value should not be lightly impaired or its scope narrowed because of a mere conjecture that the lawmaker *might* not have meant what he said.

[5] Unless the language of a statute is vague, dubious, uncertain, indefinite, or ambiguous, or conveys a meaning that is absurd, or in contradiction of other parts of the enactment, or in contravention of the legislative purpose made evident by the enactment itself, there is no room for construction, and the meaning of the terms actually employed in drafting a law must be accepted as manifesting the legislative intent. Lake County v. Rollins, 130 U. S. 662, 670, 671, 9 Sup. Ct. 651, 32 L. Ed. 1060; United States v. Goldenberg, 168 U. S. 95, 102, 103, 18 Sup. Ct. 3, 42 L. Ed. 394; The Paulina's Cargo v. United States, 7 Cranch. 52, at page 60, 3 L. Ed. 266; Lewis v. United States, 92 U. S. 618, 621, 23 L. Ed. 513; Thornley v. United States, 113 U. S. 310, 5 Sup. Ct. 491, 28 L. Ed. 999; William A. Gardner v. John C. Collins, 2 Pet. 58, 92, 7 L. Ed. 347; Maxwell et al. v. Moore et al., 22 How. 185, 191, 16 L. Ed. 251.

In support of the proposition that the Secretary of the Interior cannot delegate his authority to approve a decision of the Commissioner, the appellee cites the cases of Wedderburn v. Bliss, 12 App. D. C. 485, and Runkle v. United States, 122 U. S. 543, 7 Sup. Ct. 1141, 30 L. Ed. 1167. We are of the opinion that neither case is decisive of the point under discussion.

In Wedderburn v. Bliss, the disbarment of the attorney was approved by the Secretary himself. That approval was attacked on the sole ground that it was made without notice to the attorney, and without giving him an opportunity to submit by argument or brief his objections to the finding of the Commissioner and to the approval thereof by the Secretary. Whether the attorney was entitled to be heard by the Secretary of the Interior before approving the charges was there-

fore the only issue raised, and the right of the Secretary to delegate his power of approval was not involved in the case.

Commenting on the act of 1884 (23 Stat. 98), Mr. Justice Morris said that that act left it undetermined how and before whom a hearing was to be had, and that there was great plausibility in the theory that the hearing therein provided for should be had by the person who was authorized to take final action. The learned Justice then stated that, if he was dealing with the action of judicial tribunals, he would have no hesitation whatever in so holding, and made use of the following language, on which the appellee relies:

"A court authorized to decide necessarily is the court authorized to hear, and it may not delegate to any one its duty to hear any more than it can delegate its function to decide. * * * It is well-settled law, and a fundamental rule of our governmental system, that purely judicial functions cannot be conferred upon an executive officer. But of necessity executive officers are frequently vested with discretionary functions of a quasi judicial character, and these can no more be delegated than can strictly judicial authority."

Neither statement can well be regarded as authoritative here, for the reason that delegation of authority was not an issue in the case, and for the further reason that neither declaration, fairly construed, denies to Congress the right to authorize a delegation of judicial functions which it had the power to vest in executive or administrative officers. In our opinion Mr. Justice Morris sought to do and did nothing more than to announce the well-known doctrine that courts and judicial functionaries cannot on their own initiative delegate the performance of their duties to some one else.

In Runkle v. United States, an officer of the army, charged with violating an act of Congress and with conduct unbecoming an officer and gentleman, was found guilty by court-martial and was sentenced to be cashiered. That sentence, under the provisions of the then Sixty-Fifth Article of War, could not become effective until approved by the President of the United States. 2 Stat. 367, c. 29 (article 106, § 1342, Revised Statutes; Comp. St. § 2308a). The cashiering of the officer was approved by the Secretary of War, but not by the President. The Supreme Court of the United States held that the sentence of dismissal could not become operative until approved by the President in person, and that as that approval was not administrative, but judicial, in character, it could not be delegated to the Secretary of War. *It was not decided, however, that Congress had no power to authorize the President to delegate to the Secretary of War the performance of that duty.*

Inasmuch as section 216 of the Revised Statutes (Comp. St. § 318) provides, however, that "the Secretary of War shall perform such duties as shall from time to time be enjoined on or intrusted to him by the President relative to military commissions, the military forces, * * * or to other matters respecting military affairs," the appellee argues that the Supreme Court decided *in effect* that presidential approval of a sentence cashiering an army officer could not be delegated to the Secretary of War, notwithstanding a legislative enactment permitting such delegation. We cannot agree that section 216 authorized a delegation of the authority vested in the President by the Sixty-Fifth Article of War, and much less that the Supreme Court so de-

cided. That section was not cited in the briefs of counsel in the Runkle Case as authorizing a delegation of the judicial functions of the President, and it is nowhere referred to or commented upon by the Supreme Court in its opinion, from which it may be fairly presumed that it was not regarded as delegating or attempting to delegate the judicial duties of the President. The duties which may be performed for the President by the Secretary of War under section 216 are such as relate to military commissions, the military forces, the warlike stores of the United States, and other matters respecting military affairs.

As trial by court-martial is a judicial, not a military, proceeding, it is evident that approval of court-martial sentences is a judicial, not a military, act, and is consequently not within the scope of section 216. True enough, courts-martial are made up of military officers, and the President is Commander in Chief of the Army; nevertheless, such officers, when they hear, determine, and decide charges in court-martial cases, and the President, when he approves the sentences imposed, act, not as military, but as judicial, functionaries. We are not prepared to say, therefore, that the Supreme Court either expressly or impliedly held that Congress could not legally empower the President to delegate to the Secretary of War the review and approval of court-martial proceedings. The Runkle Case is consequently not in point.

The order and judgment granting the writ as prayed for is reversed, with costs, and cause remanded for further proceedings not inconsistent with this opinion.

Mr. Justice ROBB concurs, on the ground that the petition for the writ was prematurely filed.