PORTER v. BOWERS.

No. 4144.

District Court, W. D. Missouri, W. D.

March 20, 1947.

752

Durward Brown and Ralph E. Griffith, both of St. Louis, Mo., for plaintiff.

Charles F. Lamkin, Jr., of Kansas City, Mo., for defendant.

RIDGE, District Judge.

Philip B. Fleming, Administrator of the Office of Temporary Controls, has filed in this action motion for his substitution as party plaintiff in the place and stead of Paul A. Porter, Price Administrator of the Office of Price Administration. Defendant objects to an order of substitution being made, for the following reasons:

I. That Executive Order 9809, 50 U.S.C.A. Appendix, § 601 note (11 F.R. 14281) issued by the President on December 12, 1946, transferring the functions of the Office of Price Administration to the newly created Office of Temporary Controls, is illegal and void.

II. Because the motion for substitution is premature, in that Philip B. Fleming has not been confirmed by the United States Senate as Administrator of the Office of Temporary Controls.

III. Because there is no substantial need for continuing and maintaining this action under Title 28, U.S.C.A. § 780, and Rule 25(d), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

Disposing of the objections to the requested substitution in the order made by defendant, the following facts appear:

I. Under Title 1 of the First War Powers Act, Title 50 U.S.C.A. Appendix, § 601, the President was, on December 18, 1941, vested by Congress with power in the aid of the national security and defense and "for the more effective exercise and more efficient administration by the President of his powers as Commander-in-Chief of the Army and Navy" * * * to make such redistribution of functions among executive agencies as he may deem necessary, including any functions, duties and powers hitherto by law conferred upon any executive department, commission, bureau, agency, etc., in such manner as in his judgment would seem best.

Forty-three days after the passage of the First War Powers Act of 1941, Congress, "in the interest of the national defense and security" and as a necessity "to the effective prosecution of the present war", enacted the Emergency Price Control Act of 1942, 50 U.S.C.A. Appendix, §§ 901–946. By Section 1(b) of said act the same was

to terminate on a given date (later extended by subsequent acts of Congress to June 30, 1947), or upon the date of a proclamation by the President, or upon the date specified in a concurrent resolution by the two Houses of Congress, declaring that the further continuance of the authority created by such act was not necessary in the interest of the national defense and security, whichever date was the earlier. Regardless of the termination of said act, it was specifically provided therein "that as to offenses committed, or rights or liabilities incurred, prior to such termination date", the provisions of said act and "such regulations, orders, price schedules, and requirements" promulgated pursuant thereto were to be "treated as still remaining in force for the purpose of sustaining any proper suit, action or prosecution with respect to any such right, liability or offense", incurred by reason of the provision of said act. In section 201(b) the President was authorized and empowered "to transfer any of the powers and functions conferred (by) said act upon the Office of Price Administration, with respect to a particular commodity or commodities, to any other department or agency of the Government having other functions relating to such commodity or commodities, and to transfer to the Office of Price Administration any of the powers and functions relating to priorities or rationing conferred by law upon any other department or agency of the Government with respect to any particular commodity or commodities," except certain functions conferred by law upon the Secretary of Agriculture and other departments or agencies of the Government respecting agricultural commodities.

■ In support of his first contention, defendant makes the point, that Section 201(b) of the Emergency Price Control Act of 1942, supra, limits the power of the President to transfer functions of the Office of Price Administration to an existing department or agency of the Government "having other functions relating to" a commodity or commodities subject to regulation under the Emergency Price Control Act. In support thereof, defendant cites the cases of Porter v. Hirahara, D.C. Hawaii, 69 F.Supp. 441; Bowles v. Johnson (Cal.Mun.Ct., decided January 30, 1947); and Porter v. Wilson, D.C.Or., 69 F.Supp. 447. None of the authorities so cited are as yet officially reported. They are opinions of Courts having concurrent jurisdiction with the jurisdiction of this Court and, as such, are not binding authorities on this Court. Continental Securities Co. v. Interborough Rapid Transit Co., C.C., 165 F. 945.

■ By the First War Powers Act of 1941, supra, Congress intended to, and did, give to the President of the United States unlimited power to coordinate and redistribute the functions of executive agencies or departments of the Government one with another in aid of the national defense and the prosecution of the war. The powers so granted to the President included the right to transfer and redistribute functions, duties and powers previously existing and conferred by law upon any executive department or agency of the Government, as well as duties, functions and powers thereafter provided for subsequently created departments or agencies of the Government. This is manifest from a reading of Section 1 of said Act. As stated by the Emergency Court of Appeals, in California Lima Bean Growers Association v. Bowles, 150 F.2d 964, 966: "We think that a natural and unstrained reading of the language just quoted requires the conclusion that the power conferred upon the President to transfer functions from one to another executive agency was intended to extend to any and all functions whether existing before or after the passage of the First War Powers Act. The use in Section 1 of the clause 'including any functions, duties, and powers hitherto by law conferred upon any executive department, commission, bureau, agency, governmental corporation, office, or officer' indicates that the general language of the section was intended to grant power to redistribute functions conferred after as well as before the passage of the act. This is also borne out by the provision of Section 5 that upon the termination of the act all executive and administrative agencies 'shall exercise the same functions, duties, and powers as heretofore or as hereafter by law may be provided' regardless of any redistribution thereof made by the Presi-

dent under the act. Unless Section 1 authorizes the President to redistribute functions provided for by legislation enacted after the passage of the act, the reference to 'the same functions * * * as hereafter by law may be provided' is wholly meaningless."

Such decision of the Emergency Court of Appeals, in the absence of other controlling authority, is one that is binding on this District Court and must be followed. New Amsterdam Casualty Co. v. Iowa State Bank, 8 Cir., 277 F. 713; Vacuum Cleaner Co. v. Thompson Mfg. Co., D.C., 258 F. 239; Warren Bros. Co. v. Evans, D.C., 234 F. 657; United States v. Flannery, 4 Cir., 106 F.2d 315. We accept it as such. Said decision affirmatively disposes of defendant's contention, that the power granted to the President in the First War Powers Act cannot be made to apply to an agency or department of the Government created by Congress subsequent to the passage of said Act.

It is defendant's further contention that if the First War Powers Act is applicable to the Office of Price Administration then Congress must be held to have modified the general power conferred on the President in the First War Powers Act by the subsequent enactment of Section 201(b) of the Emergency Price Control Act of 1942. It is defendant's position that by the terms of Section 201(b) of the Emergency Price Control Act, Congress specifically limited the power of the President to transfer functions of the Office of Price Administration to another agency or department of the Government, only when such other agency or department of the Government had other functions granted to it by law, relating to a commodity or commodities within the purview of the Emergency Price Control Act. Hence, the defendant says, that the Administrator of the Office of Temporary Controls, having no function or functions relating to any commodity within the purview of the Emergency Price Control Act prior to his appointment to the Office of Temporary Controls, such Administrator could not effectively be vested with any power granted to the Price Administrator under the Emer-

gency Price Control Act of 1942. We find no such limitation existing in the power conferred on the President by the Emergency Price Control Act of 1942, as amended. The power to transfer functions of the Office of Price Administration to some other department or agency of the Government having other functions relating to a commodity subject to control by the Price Administrator is not an implied repeal of the general grant of power given to the President in the First War Powers Act. In United States v. Borden Co., 308 U.S. 188, 198, 60 S.Ct. 182, 188, 84 L.Ed. 181, Mr. Chief Justice Hughes, speaking for the Court, said: "It is a cardinal principle of construction that repeals by implication are not favored. When there are two acts upon the same subject, the rule is to give effect to both if possible. United States v. Tynen, 11 Wall. 88, 92, 20 L.Ed. 153; [In re] Henderson's Tobacco, 11 Wall. 652, 657, 20 L.Ed. 235; General Motors Acceptance Corp. v. United States, 286 U. S. 49, 61, 62, 52 S.Ct. 468, 472, 76 L. Ed. 971, 82 A.L.R. 600. The intention of the legislature to repeal 'must be clear and manifest'. Town of Red Rock v. Henry, 106 U.S. 596, 601, 602, 1 S.Ct. 434, 439, 27 L.Ed. 251. It is not sufficient as was said by Mr. Justice Story in Wood v. United States, 16 Pet. 342, 362, 363, 10 L.Ed. 987, 'to establish that subsequent laws cover some or even all of the cases provided for by (the prior act); for they may be merely affirmative, or cumulative, or auxiliary.' There must be 'a positive repugnancy between the provisions of the new law and those of the old; and even then the old law is repealed by implication only, pro tanto, to the extent of the repugnancy'. See, also, Posados v. National City Bank, 296 U.S. 497, 504, 56 S.Ct. 349, 352, 80 L.Ed. 351."

In the First War Powers Act, the President is given a blanket, sweeping grant of power which is without any limit whatever, to redistribute the functions of any department or agency of the Government, to any other department or agency. In the Emergency Price Control Act of 1942, the President was given the power to transfer any of the functions of the

Price Administrator to another department or agency of the Government having functions relating to a commodity subject to control by the Price Administrator, if he felt it was necessary. What the President may do under the Emergency Price Control Act of 1942, he already had the power, under the First War Powers Act, to accomplish the same result. There is no repugnancy between the power granted to the President in the Emergency Price Control Act of 1942 and that power granted to him under the First War Powers Act. The power granted to the President in the Emergency Price Control Act is affirmative, cumulative and auxiliary to the power previously granted to him under the First War Powers Act. An affirmative, cumulative grant of power in a subsequent Act of Congress is not a repeal by implication of a similar grant of power granted in a previous Act of Congress. Neither does a specific grant of power, relating to a given subject, presuppose a negative restriction on a previous general grant of power relating to the same subject. Wood v. United States, 16 Pet. 342, 362, 363, 41 U.S. 342, 362, 363, 10 L.Ed. 987. That it was the intent of Congress, at the time of the enactment of the Emergency Price Control Act that the power given to the President to transfer functions of the Office of Price Administration to another agency, or department, was auxiliary to the power already vested in the President by Congress under the First War Powers Act, is manifest from the debate in the Senate of the United States, as recorded in Volume 88 of the Congressional Record of Proceedings of the 77th Congress, Second Session, at page 181, where the following appears:

"Mr. Bone * * * I should like to suggest one thing that has come to my attention recently in respect to the proposal before us. Recently Congress passed a law authorizing the President to exercise powers which he heretofore had been denied the right to exercise. He is authorized now by existing legislation to turn over the functions of any department to any other department. That is a blanket, sweeping grant of legislative power given to the President, which is without any limit whatever. It is not repealed, either directly or by implication, in this measure, and it would therefore remain law.

"Now, I notice that the committee has incorporated in the bill, on page 33, a provision authorizing the President to transfer to any other department the functions of the Price Administrator. I know that no one would challenge the high purpose of the President in transferring any functions of this agency to another department if he felt it was necessary. So, whatever we do here—if we pass any legislation with a provision such as this in it, we do so with the certain knowledge that the President himself would have power to correct anything that might appear to be maladroit, or cumbersome, or that was working a hardship on anyone. Am I correct in the assumption that the power referred to is a blanket power?

"Mr. Brown. The Senator from Washington is correct. We thought, in view of the Van Nuys Act, which was passed here some days ago—I think in the preceding session in December—that, under the provisions found on page 33 of the bill, beginning in line 18, the authority to transfer functions would exist if the bill were enacted into law.

"Mr. Bone. If the bill is enacted, we enact it with the certainty that if Mr. Roosevelt feels that any injustice is being done, he has it within his power, under the broad provisions of this grant of power in the bill, to make any shift of functions that appeals to him as being desirable or necessary? Therefore, we would have the assurance, at least, if the legislation became law, that the President himself could correct any abuse if one should develop? Am I correct in that statement?

"Mr. Brown. That provision was placed in the bill at the request, I think, of the Senator from Ohio (Mr. Taft) and the Senator from Alabama (Mr. Bankhead) who desired that if the President found that it would be wise to transfer the control over any particular commodity to an agency specially equipped, the President unquestionably should have the authority to do so. That was the purpose of that particular provision.

"Mr. Bone. The grant of power was so sweeping and so complete that it challenged my attention, and it seems to me it colors any such legislation as this, because the power is retained in the hands of the President to make any shift or change he sees fit.

"Mr. Brown. We thought the President should have the authority to determine those matters.

"Mr. Barkley. Mr. President, will the Senator yield?

"Mr. Brown. I yield.

"Mr. Barkley. While is is true, as suggested by the Senator from Washington (Mr. Bone), and agreed to by the Senator from Michigan (Mr. Brown), that under the provisions of the bill the President has the authority to transfer the functions of any agency to another agency, and, therefore, he could transfer from the Price Administrator the power to fix maximum prices on agricultural products, so long as that power remains in the Price Administrator, the President could not take away from the Secretary of Agriculture the power to approve or disapprove what the Price Administrator does. He could transfer to the Secretary of Agriculture the functions of the Price Administrator with respect to farm products, but he could not take away from the Secretary of Agriculture the power of approval so long as the Price Administrator exercises his functions, and that would be the result of the adoption of this amendment.

"Mr. Bone. Oh, yes; I did not intend to give my suggestion any such color. I merely pointed out that Congress has seen fit—and I think wisely—to vest in the President a vast discretion in an emergency of this kind, and it seems to me it would be unwise for Congress in such a critical moment as now confronts the country to deprive the President of a large amount of power, for he is going to be blamed for many things that happen and for many more that do not happen.

"Mr. Barkley. I agree with the Senator, but I was assuming what the Senator had in mind would happen if the pending amendment were adopted."

■ From such debate, it is manifest that Congress did not intend to limit or restrict the power granted to the President of the United States in the First War Powers Act by any provision contained in the Emergency Price Control Act of 1942. Neither of said acts are repugnant one with the other concerning the power here considered but, on the contrary, are companionable in all respects relating to the power to transfer the functions and duties of the Office of Price Administration to some other department, or agency of the Government, either in toto, or in respect to a specified commodity. The objection of defendant, to the effect that Executive Order 9809, supra, is void and ineffectual to transfer duties and functions of the Price Administrator to the Administrator of the Office of Temporary Controls, is rejected.

II. Defendant next contends that Mr. Fleming, as Administrator of the Office of Temporary Controls, should not be substituted as party plaintiff in this action, because he has not as yet been confirmed by the United States Senate.

■ As we have heretofore pointed out, Congress, by the enactment of the First War Powers Act, vested power in the President to redistribute the duties and functions of the various agencies and departments of the Government into other agencies and departments of the Government, whether the latter existed at the time of the passage of said Act or were subsequently created. In pursuance of the power so vested in him, the Chief Executive has from time to time created new agencies by executive order and appointed administrators therefor, without the advice and consent of the Senate, and consolidated under the newly created agencies functions and powers of previously existing agencies and departments. See Executive Order 9322, 8 F.R. 14783, Title 50 U.S.C.A.Appendix, § 601 note, where the functions of the Commodity Credit Corporation and other agencies were consolidated in the War Food Administrator; Executive Order 9347, 8 F.R. 7207, Title 50 U.S.C.A. Appendix, § 601 note, where the Office of War Mobilization was created, and the

Administrator thereof appointed by the President, and vested with the function of unifying the activities of other Federal agencies and departments; Executive Order 9361, Title 50 U.S.C.A.Appendix, § 601 note, supplementing Executive Order 9347, supra, vesting in the War Mobilization Administrator the functions and duties relative to foreign economic affairs; Executive Order 9425, 50 U.S.C.A.Appendix, § 601 note, establishing the Surplus War Property Administration and the appointment of a Director therefor by the President. The construction so given to said Act by the Chief Executive, authorizing him to create new agencies by executive order and to appoint administrators for such agencies, without the specific advice and consent of the Senate, is entitled to great weight when a court is called upon to construe the extent of power vested in the President by Congress by the passage of the First War Powers Act. United States v. American Trucking Associations, 310 U.S. 534, 549, 60 S.Ct. 1059, 84 L.Ed. 1345; Gray v. Powell, 314 U.S. 402, 412, 62 S.Ct. 326, 86 L.Ed. 301; Billings v. Truesdell, 321 U.S. 542, 552, 64 S.Ct. 737, 88 L.Ed. 917. Especially is this so when Congress has indicated approval of such construction of the First War Powers Act, by the President, in various appropriations made for the use of the agencies thus created and the payment of the salaries to the administrators so appointed. We find no provision in the First War Powers Act which prohibits the appointment of an Administrator for the Office of Temporary Controls by the President without the advice and consent of the Senate. We think that a natural and unstrained interpretation of the powers vested in the President by the First War Powers Act authorizes the creation of such office and the appointment of an administrator therefor without confirmation of such action by the United States Senate. That the United States Senate concurs in such interpretation is manifest by the proceedings recorded in Volume 93 of the Congressional Record of Proceedings of the 81st Congress, page 1746, where, on March 5, 1947, the Senate agreed to an urgent deficiency appropriation bill for the Office of Temporary Con-

trols, in the sum of $7,991,815, and expressed that it was the intent of Congress "that all funds heretofore and herein appropriated shall be used to defray all expenses incident to the closing and liquidation of the Office of Price Administration and the Office of Temporary Controls by June 30, 1947". It is manifest from the appropriation there made that Congress was cognizant of Executive Order 9809, supra, creating the Office of Temporary Controls and the appointment of an Administrator for said Office, as well as the transfer to the Office of Temporary Controls, the functions and duties of the Administrator of the Office of Price Administration. Such implied approval by Congress of the construction given to the First War Powers Act by the President and the actual granting of such a power in the President by the provisions of the First War Powers Act, is consistent with Article 2, Sec. 2, Par. 2 of the Constitution of the United States, which provides that "* * * the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone * * *." The Office of Price Administration was not abolished by the provisions of Executive Order 9809, supra. Said office was, however, consolidated with the Office of Temporary Controls, so as to form one office vested with all the functions of the Office of Price Administration, as well as those of other offices. Under such circumstances, the Administrator of the Office of Temporary Controls, succeeded to the duties of the Office of Price Administration. Consequently, the Administrator of the Office of Temporary Controls becomes the successor in office of the former Price Administrator, by consolidation, and amalgamation of said offices. Such was within the power of, and what was accomplished by, the President, under the authority granted to him by the First War Powers Act, supra, by promulgation of Executive Order 9809, supra. In view of the foregoing, we hold that ·it was not necessary for Philip B. Fleming, as Administrator of the Office of Temporary Controls, to be confirmed by the Senate before he became the lawful successor of Paul A. Porter as Administrator of the

Office of Price Administration and succeeded to the functions and duties of said Office.

■ III. Defendant next contends that there is no substantial need shown for continuing and maintaining this action by the Administrator of the Office of Temporary Controls. The instant action was instituted under Section 205(e) of the Emergency Price Control Act of 1942, supra, and seeks a recovery of treble damages of defendant for charges made in excess of maximum ceiling prices allowed by regulations promulgated by the Office of Price Administration under said Act relating to automotive repair services. The concluding provision of Section 1(b) of the Emergency Price Control Act of 1942 provides that upon the termination of said Act, "offenses committed, or rights or liabilities incurred, prior to such termination date, the provisions of this Act and such regulations, orders, price schedules, and requirements shall be treated as still remaining in force for the purpose of sustaining any proper suit, action or prosecution with respect to any such right, liability, or offense". In the resolution passed by Congress, extending the life of the Emergency Price Control Act of 1942, as amended, to June 30, 1946, it is provided in Section 18 thereof, that "any proceeding, petition, application, or protest which was pending under the Emergency Price Control Act of 1942, as amended, or the Stabilization Act of 1942, as amended, on June 30, 1946, shall be proceeded with and shall be effective in the same manner and to the same extent as if this Act had been enacted on 'June 30, 1946". The resolution so passed by Congress was approved July 25, 1946. Laws of the 79th Congress, Second Session, U.S. C.Cong.Service, pages 632–646, 50 U.S.C.A. Appendix, § 901a et seq. The mandate of the original Act, as well as that contained in the joint resolution of Congress, supra, is sufficient in itself to establish that the instant action is a proper suit to be maintained. The damages here sought are for a "liability incurred" during the period of enforcement of said Act. At the first pre-trial conference held in this cause, an exhibit was submitted by the Office of Price Administration to defendant, purporting to contain tabulations alleged to have been made by investigators of the Office of Price Administration from the books and records of defendant. If correct and proved, such tabulations would prima facie establish an alleged violation by defendant of the maximum price regulation involved in this action. Such facts appearing at pre-trial is a sufficient showing for this Court to ascertain the need of continuing with the prosecution of the above cause.

Defendant's objections to the substitution of Philip B. Fleming, Administrator of the Office of Temporary Controls, are overruled. Plaintiff's motion for substitution of Philip B. Fleming, Administrator of the Office of Temporary Controls, in place and stead of Paul A. Porter, Administrator of the Office of Price Administration, is sustained.

It is so ordered.