## SIMA v. UNITED STATES.
### No. 48533.
United States Court of Claims.

Decided May 1, 1951.

Norman C. Melvin, Jr., Baltimore, Md. (Cook, Ruzicka, Veazey & Gans, Baltimore, Md., on the briefs), for the plaintiff.

Robert E. Mitchell, Washington, D. C., H. G. Morison, Asst. Atty. Gen., and Newell A. Clapp, Acting Asst. Atty. Gen., for the defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

HOWELL, Judge.

The plaintiff, formerly a Lieutenant, United States Navy and Leader of the United States Naval Academy Band, was dismissed from the service on January 9, 1947, pursuant to the judgment and sentence of a Navy general court-martial. By this suit plaintiff seeks to recover the pay and allowance allegedly due him from January 9, 1947 to January 28, 1948, the date his petition was filed herein, on the grounds that the sentence of dismissal was void because not legally reached, and because such sentence of dismissal was never confirmed. He therefore asks for judgment in the amount of $7,324.80 with interest as provided by law and costs of this proceeding.

Plaintiff enlisted in the Navy as a musician in 1910 and served continuously thereafter as a member of the United States Naval Academy Band. In 1933 he was appointed Leader of the Band with the rank of Lieutenant. He was suspended from the position in February 1946, and was dismissed from the service on January 9, 1947, pursuant to conviction and sentence by a Navy general court-martial which tried him at the Naval Academy from August 14 to 29, 1946, upon charges and specifications preferred June 27, 1946, by the Acting Secretary of the Navy.

A consideration of whether plaintiff has been denied his constitutional rights in the manner in which he was arrested, furnished the charges, and brought to trial, and whether or not the sentence of dismissal was validly confirmed are now before this court.

Plaintiff says that his dismissal from the United States Naval Service, effective January 9, 1947, was improper and without warrant of law for the following reasons: That the general court-martial was without jurisdiction because of noncompliance with the provisions of Articles 24, 43, and 44 of the Articles for the Government of the Navy, 34 U.S.C.A. § 1200, Arts. 24, 43, and 44, as a result of which he was denied the due process of law guaranteed by the Fifth Amendment to the Constitution; that he was denied his right to a speedy trial guaranteed by the Sixth Amendment

to the Constitution; and that the sentence of the general court-martial was not confirmed by the President of the United States as required by Article 53 of the Articles for the Government of the Navy, 34 U.S.C.A. § 1200, Art. 53.

Various grounds based on certain circumstances, some of which occurred before, some during, and some after, the general court-martial, are advanced by plaintiff in support of his contention that he was deprived of his constitutional right to due process of law. These grounds will be separately considered.

From the stipulation of facts filed herein by the parties, it appears that on February 13, 1946, the Superintendent, U. S. Naval Academy, called plaintiff to his office and advised him that he had received reports of alleged misconduct on his part, as a result of which an investigation would be undertaken. Whereupon, plaintiff was put in the custody of Commander W. F. Morrison, U. S. N., who on that date escorted plaintiff to his home and then to the U. S. S. Reina Mercedes, the U. S. Naval Academy station ship. On February 14, 1946, the Superintendent appointed a Board of Investigation for the purpose of inquiring into and reporting upon the alleged misconduct of various persons, including plaintiff. The Board convened February 16, 1946, and conducted hearings until February 26, 1946. On February 27, 1946, the Board delivered its findings of fact, opinion, and recommendations to the Superintendent. While plaintiff alleges that these findings were never made known to him, the stipulation of facts filed herein by the parties admits that the Board's findings were not made public, in accordance with the *prescribed* naval procedure in such cases. It follows that plaintiff was not entitled to be informed of the Board's findings.

It also appears that on February 28, 1946, the Superintendent, U. S. Naval Academy, directed the Commanding Officer, U. S. S. Reina Mercedes, to place plaintiff under arrest pending trial by general court-martial, in accordance with the recommendation of the Board of Investigation. In a letter from the Commanding Officer, U. S. S. Reina Mercedes, dated February 28, 1946, plaintiff was advised, in part, as follows: "Subj: Arrest—pending trial by General Court-Martial. * * * 1. By direction of the Superintendent, U. S. Naval Academy, you are hereby placed under arrest pending your trial by General Court-Martial."

Plaintiff says that on February 28, 1946, he was put under arrest within the meaning of Article 43 of the Articles for the Government of the Navy, 34 U.S.C.A. § 1200, Art. 43 and therefore, at that time, should have been furnished with a true copy of the charges with the specifications. It is conceded that a copy of the charges with the specifications was not served upon plaintiff on February 28, 1946. The stipulation of facts, however, concedes that the Superintendent, U. S. Naval Academy, had no authority either as Superintendent or as Commandant of the Severn River Naval Command to order a general court-martial. It is noted that plaintiff was present at the hearings of the Board of Investigation, was read the convening order, and was represented by counsel at said hearings. In view of the lack of authority of the Superintendent, U. S. Naval Academy, to order a general court-martial, it is apparent that the aforementioned letter to plaintiff, dated February 28, 1946, erroneously described the arrest as one "pending trial by General Court-Martial." The arrest should have been described as one pending the decision and action of higher authority upon the case.

Article 43 of the Articles for the Government of the Navy reads as follows: "The person accused shall be furnished with a true copy of the charges, with the specifications, at the time he is put under arrest; and no other charges than those so furnished shall be urged against him at the trial, unless it shall appear to the court that intelligence of such other charge had not reached the officer ordering the court when the accused was put under arrest, or that some witness material to the support of such charge was at that time absent and can be produced at the trial; in which case

reasonable time shall be given to the accused to make his defense against such new charge."

The arrest mentioned in Article 43 of the Articles for the Government of the Navy refers to the formal arrest for trial. In this connection, the Attorney General has held:

"Construing Articles 24, 43, and 44 together, it is, in my opinion, clear that there may be two arrests; first, an arrest in an emergency, or upon the discovery of the alleged wrong-doing, with a view to a preliminary examination, and if necessary the formulation and specification of charges; and, second, in the language of Article 44, 'an arrest for trial.' I think it equally clear that Article 43, providing that 'the person accused shall be furnished with a true copy of the charges, with the specifications, at the time he is put under arrest,' has reference to the second and formal arrest for trial, as referred to in Article 44." 19 Op. Atty. Gen. 472, 475 (1890). See also Johnson v. Sayre, 158 U.S. 109, 117, 15 S.Ct. 773, 39 L.Ed. 914; United States v. Smith, 197 U.S. 386, 391–392, 25 S.Ct. 489, 49 L. Ed. 801; Bishop v. United States, 197 U.S. 334, 339, 25 S.Ct. 440, 49 L.Ed. 780.

In a case involving somewhat similar facts, Ex parte Webb, D.C.D.Hawaii, 84 F.Supp. 568, 569, Webb, a Navy seaman suspected of arson, was originally arrested for "safekeeping." Nine days later, following an investigation and a recommendation by his commanding officer that he be court-martialed, he was committed to the brig. At the direction of the commanding officer, the commitment papers stated that Webb was to be confined "awaiting trial by general court-martial." One hundred and seventeen days later the proper convening authority issued an order for trial, preferred the charge of arson with three specifications, and Webb was thereupon placed under arrest for trial and served with the charge and specifications. After trial and conviction, Webb petitioned for a writ of habeas corpus, contending that his confinement to the brig had been an arrest for trial under Article 43, Articles for the Government of the Navy, which should have been accompanied by delivery of the charge and specifications. The court, in denying the petition, held in part as follows: "Art. 43 was not violated. Obviously a description in Webb's service record to the effect he was being confined (from September 17 to January 5) 'awaiting trial by general court-martial' was a mistake. No one can be held in this status until one having the authority to order a person charged and tried before a court martial has so directed. In this instance that event did not occur until January 4, following which for the first time Webb was arrested for trial and served with a copy of the charge and specifications. The fact of the matter is, as revealed by the evidence, that between September 8 and September 17 Webb was confined for 'safekeeping' * * * while thereafter, his commanding officer having recommended that he be court martialed, the commitment papers should have properly described his confinement as 'pending action by higher authority,' to wit, the action of the Admiral upon the recommendation." 84 F. Supp. at page 569.

The parties herein have stipulated that on June 27, 1946, Acting Secretary of the Navy John L. Sullivan issued a precept for plaintiff's trial, appointing a general court-martial composed of seven naval officers with instructions to convene July 1, 1946, or as soon thereafter as practicable. On the same day, Mr. Sullivan likewise signed and issued a formal statement of the charges and specifications preferred against plaintiff. The charges and specifications were received at the Naval Academy on June 28 by the Judge Advocate of the general court-martial so appointed and were read to and personally served upon plaintiff. Upon being served with the charges, plaintiff was advised that he was being placed under arrest for trial by general court-martial and that the limits of his arrest would remain the same as they then were.

On June 28, 1946, therefore, there occurred the arrest for trial contemplated by 34 U.S.C.A. § 1200, Art. 43, and a copy of the charges and specifications was properly served upon plaintiff, pursuant to that article. In the light of all the circum-

stances, the mislabeling of plaintiff's arrest on February 28, 1946, could well be considered a pretrial procedural error which did not offset the jurisdiction of the general court-martial and which should not nullify a conviction after a fair trial. Cf. Humphrey v. Smith, 336 U.S. 695, 697–698, 69 S.Ct. 830, 93 L.Ed. 986. Furthermore, errors in procedure can be corrected only by the proper military authorities. Hiatt v. Brown, 339 U.S. 103, 111, 70 S.Ct. 495, 94 L.Ed. 691; Ex parte Tucker, D.C., 212 F. 569, 570.

Plaintiff also alleges that certain of the charges dated June 27, 1946, related to alleged misconduct arising subsequent to plaintiff's arrest on February 28, 1946. From March 13 to March 25, 1946, plaintiff's son was tried by summary court-martial. The prosecution called plaintiff as a witness in this trial and he testified therein on March 21 and 22, 1946. It appears that a portion of his testimony in that proceeding was made the subject of a specification under a charge of perjury in the subsequent general court-martial proceeding against plaintiff. It is noted that plaintiff's trial did not begin until August 14, 1946. As mentioned above, this court considers plaintiff's arrest on June 29, 1946, as the arrest for trial contemplated by 34 U.S.C.A. § 1200, Art. 43. The latter article does not restrict the charges that might be preferred against an accused to those related to alleged misconduct arising prior to the date of the preliminary detention. Plaintiff also contends that inasmuch as he was called by the prosecution in the summary court-martial of his son and the general court-martial of Chief Steward W. W. Rollins, which arose out of the same factual situation, that he was thereby placed in an unfair position. Plaintiff, however had the option either to decline to testify on the ground that his answers might incriminate him or to tell the truth. This court does not feel that plaintiff was placed in an unfair position in this regard.

Plaintiff also contends that he requested a change of venue of the general court-martial, which request was denied by the Acting Secretary of the Navy. Nothing appears to be irregular in this respect.

Furthermore, when the court convened plaintiff's counsel objected to each member thereof except the court's president. The challenged members were subjected to individual *voir dire* examination as to the extent of their knowledge of the developments at the earlier trials of Sima, Jr., and Rollins, and as to their open-mindedness on the question of plaintiff's innocence or guilt and their ability to afford him a fair and impartial trial. At the conclusion of these examinations, plaintiff's counsel, in each instance, withdrew their objection, and the challenged officer resumed his seat as a member of the court.

At the outset of his trial, which began on August 14, 1946, plaintiff filed a motion to dismiss all of the charges and specifications on the ground that there had been a failure to comply with Article 43 of the Articles for the Government of the Navy, 34 U.S.C.A. § 1200, Art. 43 in serving said charges and specifications upon him. Testimony and exhibits were introduced in support of this motion and oral argument had thereon, after which plaintiff filed a brief calling attention, in part, to Articles 24, 43, and 44 of the Articles for the Government of the Navy, 34 U.S.C.A. § 1200, Arts. 24, 43, and 44. The motion was taken under consideration by the court and denied. On August 17, 1946, counsel for plaintiff filed a plea to the court's jurisdiction which alleged that the court was not legally constituted for the reason that there had been a lack of due process in the service of charges upon plaintiff. Additional testimony and exhibits were offered in support of this plea, oral argument had thereon, and a brief filed which again cited the aforementioned Articles 24, 43, and 44 of the Articles for the Government of the Navy. The plea was taken under consideration by the court and overruled. The denial of the motion, as well as the overruling of the plea by this duly constituted naval tribunal, appears to us to have been quite regular.

Plaintiff also says that the court sat until September 3, 1946, when it concluded its proceedings, and that on August 31, 1946, the court announced its findings of "Not Proved" with respect to certain charges,

withheld its findings as to other charges, and imposed a sentence which was not made known to him at that time. On September 3, 1946, the court, after hearing plaintiff's evidence in mitigation, directed the Judge Advocate to record its sentence. On September 5, 1946, plaintiff's counsel requested and received the Navy's permission to file a brief on plaintiff's behalf in connection with the Acting Secretary's review of the case.

■ Plaintiff also says that he was denied his right to a speedy trial guaranteed by the Sixth Amendment to the Constitution. It is true that four months elapsed between plaintiff's arrest on February 28, 1946, and his arrest for trial on June 28, 1946. However, the delay involved appears to have been justified by the requisites of the case. It is noted that the Board of Investigation convened February 16, 1946, and conducted hearings until February 26, 1946; that on February 27, 1946, the Board delivered its findings of fact, opinion, and recommendations to the Superintendent, U. S. Naval Academy. On March 5, 1946, the Board's proceedings, findings, opinion, and recommendations were approved by the Superintendent, U. S. Naval Academy, who transmitted the record of the Board's proceedings to the Navy Department for review and recommendations respecting plaintiff. Upon review, the Judge Advocate General of the Navy found that the evidence adduced by the Board of Investigation was "inadequate to substantiate trial on all the charges recommended," and he therefore caused a further investigation to be undertaken at Annapolis. This further investigation was not completed until about May 20, 1946. The right to a "speedy trial" mentioned in the Sixth Amendment to the Constitution is necessarily relative; it is consistent with delays and depends upon circumstances. Beavers v. Haubert, 198 U.S. 77, 87, 25 S.Ct. 573, 49 L.Ed. 950. Ex parte Webb, supra, 84 F.Supp. at page 570, held in part as follows: "In this regard the petition is not timely. Had it been brought during the 117–day period during which Webb was confined awaiting the action of the Admiral upon the recommendation that Webb be court-martialed,

the court would have had then for consideration the question of whether or not upon the facts and circumstances the failure to charge Webb promptly was reasonable or unreasonable. If it was found to have been the latter, the writ could issue, as the Navy too should not hold a man indefinitely without just cause without charging him and bringing him to trial within a reasonable time thereafter. Here, even if it be assumed that the question is still open at this late date, the facts and circumstances show both the time which elapsed before charging Webb and the time which intervened between that date and the date of the trial to be fully justified * * * by the * * * facts * * *."

It is significant that the reviewing military authority—the Acting Secretary of the Navy—set aside the court's findings on certain specifications, *but otherwise approved its proceedings and findings*. Reaves v. Ainsworth, 219 U.S. 296, 304, 31 S.Ct. 230, 233, 55 L.Ed. 225, states that: "To those in the military or naval service of the United States the military law is due process. The decision, therefore of a military tribunal acting within the scope of its lawful powers cannot be reviewed or set aside by the courts." See also United States ex rel. French v. Weeks, 259 U.S. 326, 335, 42 S.Ct. 505, 66 L.Ed. 965; United States ex rel. Creary v. Weeks, 259 U.S. 336, 344, 42 S.Ct. 509, 66 L.Ed. 973; United States ex rel. Innes v. Hiatt, 3 Cir., 141 F. 2d 664, 666.

■■ The general court-martial, it must be concluded, had jurisdiction of plaintiff and of the offenses with which he was charged. Its proceedings and sentence are not open to review or collateral attack in any civil tribunal. Dynes v. Hoover, 20 How. 65, 82, 15 L.Ed. 838; Johnson v. Sayre, 158 U.S. 109, 118, 15 S.Ct. 773, 39 L.Ed. 914; Carter v. Roberts, 177 U.S. 496, 497–498, 20 S.Ct. 713, 44 L.Ed. 861; Hiatt v. Brown, 339 U.S. 103, 111, 70 S.Ct. 495, 94 L.Ed. 691.

On January 11, 1947, plaintiff filed a petition for a writ of habeas corpus in the United States District Court for the District of Maryland, alleging that plain-

tiff's arrest and subsequent trial and sentence were "illegal, arbitrary and capricious" in violation of the Fifth and Sixth Amendments to the Constitution and of Articles 24 and 43 of the Articles for the Government of the Navy. The petition was dismissed. Plaintiff's appeal in the Fourth Circuit Court of Appeals was dismissed without prejudice to the appellant for the reason that in the meantime plaintiff had been released from naval custody, and the question had thereby been rendered moot.

In Shapiro v. United States, 69 F.Supp. 205, 107 Ct.Cl. 650, this court stated that it had no power to review court-martial proceedings and could give relief only if the verdict of the court-martial was absolutely void; that if it was void, the court had jurisdiction to render judgment for illegally withheld pay.

In the case of Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461, the Supreme Court held that while jurisdiction of a court-martial court might be complete in the beginning, it could be lost in the course of the proceedings due to failure to complete the court by providing counsel for the accused.

From the entire record in this case, we cannot say that plaintiff was deprived of his rights under the Fifth and Sixth Amendments to the Constitution of the United States to the extent that the verdict of the court-martial was void.

Finally, plaintiff says that his dismissal from the United States Naval Service was improper and without warrant of law because the sentence of the general court-martial was not confirmed by the President of the United States as required by Article 53 of the Articles for the Government of the Navy, 34 U.S.C.A. § 1200, Art. 53. Said article reads as follows: "No sentence of a court-martial, extending to the loss of life, or to the dismissal of a commissioned or warrant officer, shall be carried into execution until confirmed by the President. All other sentences of a general court-martial may be carried into execution on confirmation of the commander of the fleet or officer ordering the court."

Plaintiff contends that the duty of confirmation imposed upon the President by said Article 53 is a judicial duty, that the act of confirmation must be the personal act of the President, and that said duty of the President may not be delegated by him. Further, that the attempted delegation of that duty by Executive Order No. 9556, dated May 26, 1945, 10 Fed.Reg. 6151 was an invalid act unless Congress had authorized the President to delegate that duty. In this regard, plaintiff relies strongly on the case of Runkle v. United States, which states in part as follows, 122 U.S. 543, 557, 7 S.Ct. 1141, 1146, 30 L.Ed. 1167: "There can be no doubt that the president, in the exercise of his executive power under the constitution, may act through the head of the appropriate executive department. The heads of departments are his authorized assistants in the performance of his executive duties, and their official acts, promulgated in the regular course of business, are presumptively his acts. That has been many times decided by this court."

The Court's ruling in the Runkle case, however, was subsequently narrowed by decisions holding that the President's action could be presumed without his signature appearing on the record. United States v. Page, 137 U.S. 673, 11 S.Ct. 219, 34 L.Ed. 828; Fletcher v. United States, 148 U.S. 84, 13 S.Ct. 552, 37 L.Ed. 378.

By said Executive Order No. 9556 the President, by virtue of the authority vested in him by the Constitution and laws of the United States and particularly Title I of the First War Powers Act, 1941, transferred and delegated to the Secretary of the Navy and the Under Secretary of the Navy all functions, duties and powers of confirmation vested in the President under Article 53 of the Articles for the Government of the Navy in all cases of sentences except those extending to the loss of life.

Title I of the First War Powers Act, approved December 18, 1941, 55 Stat. 838, 50 U.S.C.A. Appendix, § 601, authorized the President to make such redistribution of functions among executive agencies as he might deem necessary including "any

functions, duties, and powers hitherto by law conferred upon *any* executive department, commission, bureau, agency, governmental corporation, office, or officer, in such manner as in his judgment shall seem best fitted to carry out the purposes of this title * * *" without limitation save as to the General Accounting Office (emphasis added).

By its terms this Act authorized the President to redistribute functions, duties and powers, as he might deem necessary and in such manner as in his judgment should seem best fitted to carry out the purposes of the Act—*e. g.,* the national security and defense, the successful prosecution of the war, the support and maintenance of the Army and Navy, the more effective exercise and more efficient administration by the President of his powers as Commander in Chief of the Army and Navy. The language of the Act does not restrict the nature or type of function, duty or power conferred by Congress, that might be redistributed by the President. It is significant that Congress saw fit to specify the General Accounting Office as an exception, yet failed to refer to judicial (or *quasi-judicial)* functions, duties and powers conferred by Congress.

The broad power conferred upon the President by the First War Powers Act is suggested by Fleming v. Mohawk Wrecking & Lumber Co., 331 U.S. 111, 115–118, 67 S.Ct. 1129, 91 L.Ed. 1375. See also, Porter v. Bowers, D.C., 70 F.Supp. 751, 754.

■ Article 1, Section 8, of the Constitution gives Congress jurisdiction to make Rules for the Government and Regulation of the land and naval forces, and pursuant to this authority Congress has the power to provide for the trial and punishment of military and naval offenses. Courts-martial, therefore, do not depend for their existence upon, nor do they exercise, the grant of Federal judicial power in Article III of the Constitution. Dynes v. Hoover, 20 How. 65, 78–79, 15 L.Ed. 838. Pursuant to this power, Congress could specify the President, or any other executive officer, to exercise the power of confirmation in court-martial cases.

In this regard, the new Uniform Code of Military Justice, Act of May 5, 1950, Pub.Law No. 506, 81st Congress, 2nd Session, 50 U.S.C.A. § 551 et seq., which supersede the Articles of War and the Articles for the Government of the Navy, provide that a sentence extending to the dismissal of an officer, other than a general or flag officer, shall be executed upon approval of the Secretary of the particular department, or such Under Secretary or Assistant Secretary as may be designated by him. Article 71(b) of the Act, 50 U.S. C.A. § 658(b).

In Robertson v. United States, 52 App.D. C. 177, 285 F. 911, 914, the Court of Appeals for the District of Columbia stated in part as follows: "As an abstract proposition it is true that judicial authority cannot be delegated; but can it be said, no constitutional inhibition intervening, that Congress, having the power to clothe an executive or administrative officer with judicial functions, has no power to authorize their delegation? * * * We think not."

■ This court is of the opinion that Congress, if it so chose, could authorize the President to delegate his duty of confirmation of court-martial sentences and that Title I of the First War Powers Act permitted such delegation. It follows that plaintiff's sentence was properly confirmed.

The plaintiff is not entitled to recover, and the petition is therefore dismissed.

JONES, Chief Judge, and MADDEN, WHITAKER, and LITTLETON, Judges, concur.